

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | 08-20-00168-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. One |
| GABRIELA QUIROZ MACEDO, | § | of Williamson County, Texas |
| Appellee. | § | (TC# 20-0505-CC1) |

**O P I N I O N**

The State appeals the trial court's order granting the relief requested in the application for writ of habeas corpus filed by Gabriela Quiroz Macedo. The State contends (i) the trial court erred in finding Quiroz Macedo's counsel rendered ineffective assistance by failing to fully advise Quiroz Macedo of the immigration consequences of her plea of guilty to a misdemeanor offense and that she was prejudiced by that performance, and (ii) the trial court erred in finding that laches did not bar Quiroz Macedo's claim. For the reasons that follow, we conclude that the record does not support the trial court's ruling and the trial court abused its discretion in granting the relief

Quiroz Macedo requested in her application for writ of habeas corpus and we reverse the trial court's order.[1]

## I. PROCEDURAL AND FACTUAL BACKGROUND

While a juvenile, Quiroz Macedo crossed the border from Mexico to the United States illegally.[2] These facts are drawn from an exhibit attached to the state's general denial and brief with supporting evidence in response to applicant's application for writ of habeas corpus. Specifically, a Form I213 was prepared and submitted by the U.S. Department of Homeland Security which stated "QUIROZ-Macedo, Gabriela (FEMALE/ JUVENILE- DOB: 09/23/1992) is not a national or citizen of the United States. Subject is a native and citizen of Mexico, who acknowledges illegal entry by crossing the international boundary into the United States, on or about an unknown date . . . ."[3]

In December of 2009, Quiroz Macedo pled guilty in a Travis County District Court to attempt to commit possession of a controlled substance: alprazolam PG 1 <1g, a lesser-included misdemeanor of the indicted offense. She was placed on community supervision.[4] Less than three months later, Quiroz Macedo was arrested for theft. While being transported to jail and after being

---

[1] As this case was transferred from our sister court in the Third Court of Appeals of Texas, we decide it in accordance with the precedent of that court. TEX.R.APP.P. 41.3.

[2] 8 U.S.C. § 1182(a)(6)(A)(i) provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General is inadmissible."

[3] A form I213 is considered "presumptively reliable" and admissible even absent the testimony of the officer who prepared it, unless "the reliability of the form is somehow undermined." *Felzcerek v. I.N.S.,* 75 F.3d 112, 117 (2d Cir. 1996); *see also* Tex.R.Evid., 803(8) (public records admissible "unless the sources of information or other circumstances indicate lack of trustworthiness."). Quiroz Macedo never claimed the form was not trustworthy.

[4] On February 12, 2020, Quiroz Macedo's 2009 conviction was vacated, and the case dismissed. That case can no longer cause her to be deportable.

2

told her purse would be searched upon arrival at the jail, she admitted that she illegally possessed alprazolam in her purse. On March 12, 2010, Quiroz Macedo was charged with possession of a controlled substance, a misdemeanor, which was not enhanced by the prior conviction. On March 24, Quiroz Macedo completed a form to request a court-appointed attorney and on March 29, the court appointed William Watson to represent her. Two days later, on March 31, 2010, the United States Supreme Court handed down its opinion in *Padilla v. Kentucky* holding that the Sixth Amendment requires counsel to inform a non-citizen client when "automatic" deportation arises as a clear and certain consequence of the particular guilty plea; however, in cases where a non-citizen's deportation risk is unclear and uncertain, counsel's duty was to advise the client that the particular plea could result in deportation. *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).

On April 8, 2010, Quiroz Macedo appeared in court with her attorney, signed plea papers and pled guilty to possession of a controlled substance less than 2 ounces. Quiroz Macedo and her counsel signed a form entitled "Admonitions to Defendant" which contained a warning that "If Defendant is not a United States citizen, a plea of 'GUILTY' or 'NO CONTEST' to the offense charged may result in deportation, exclusion from admission to this country, or the denial of naturalization under federal law." Quiroz Macedo signed the form immediately below a statement that read: "I have read and accept the admonishments, waivers, and plea agreement above and I am aware of the consequences of my plea." Quiroz Macedo's attorney also signed the form below an acknowledgement that read: "I believe Defendant to be mentally competent, and Defendant understands the admonitions, waivers, and consequences of his/her plea. I approve and consent to the foregoing matters and Defendant's signing of this document." The trial court accepted Quiroz

3

Macedo's plea of guilty and found her guilty as charged. She was sentenced to forty days in the county jail with credit for thirty days' time served.

The U.S. Department of Homeland Security Form I213 revealed that Quiroz Macedo was "found in the Williamson County Jail on March 10, 2010 after having been arrested for [possession of a controlled substance]." She was interviewed by an agent and an Immigration and Customs Enforcement (ICE) detainer was placed on her at that time. Quiroz Macedo was released from her forty-day sentence on April 12, 2010 but remained in jail pursuant to the ICE detainer. On June 12, 2010, she had a preliminary immigration hearing and was released to the custody of her mother under conditions of release signed by Quiroz Macedo.

Over 119 months after Quiroz Macedo's conviction and detention by ICE, she filed an application for writ of habeas corpus alleging ineffective assistance of counsel by Watson. Through the application and the affidavit of Quiroz Macedo in support of her application, it was alleged that Quiroz Macedo's plea was involuntary because Watson failed to advise her that her second controlled substance conviction could be considered an aggravated felony for immigration purposes; to advise her that her conviction could render her ineligible for discretionary cancellation of removal and other non-specified relief; to advise her that her conviction could possibly affect her eligibility for special immigrant juvenile status and that he failed to confer with an immigration lawyer before she entered her plea. In her affidavit, Quiroz Macedo also summarily stated that "Had I been advised of these immigration consequences, I would not have entered the plea agreement, and would have taken my case to trial." Applicant requested that the habeas court "[vacate] her unlawfully obtained plea and/or sentence."

Applicant also attached an affidavit from the attorney who represented her at the time of

4

her plea. The affidavit reads in full:

> I am William Lloyd Watson. I represented Ms. Quiroz Macedo in case number 10-01885-1. The facts stated in the affidavit are within my personal knowledge and are true and correct. I am capable of making this affidavit.

> 3.
>
> From November 2009 to June 2010, I was appointed as counsel on misdemeanor cases in Williamson County. The time between November 2009 and June 2010 was the only time in my career that I practiced criminal law. Several of those cases involved drug offenses. From November 2009 to June 2010, I was appointed as counsel in approximately twenty-five cases. I have not practiced criminal law since June 2010.

> 4.
>
> When I served as appointed counsel on misdemeanor cases, I never consulted with immigration attorneys about specific immigration consequences. I do not have experience with immigration law and never practiced immigration law.

In the habeas court, Quiroz Macedo filed a reply to state's general denial and response to application for writ of habeas corpus. Her current immigration counsel's affidavit was attached as supporting evidence. It reads:

> I am Patrick Espinosa, I represent Ms. Gabriela Quiroz Macedo in ongoing immigration proceedings. My firm, Lorenzon Law LLC, began to work with Ms. Quiroz Macedo around April 2014. Ms. Quiroz Macedo is currently in removal proceedings.

> Ms. Quiroz Macedo had a preliminary hearing following her conviction in this case and was released from detention. Ms. Quiroz Macedo's second immigration hearing is scheduled for June 8, 2020. As such, Ms. Quiroz Macedo has not been at risk for deportation until recently.

> Ms. Quiroz Macedo's conviction in the underlying case automatically bars her from cancellation of removal. Ms. Quiroz Macedo has a three year-old son who is a U.S. Citizen and who has a rare chromosomal disorder. Ms. Quiroz Macedo [is] his primary caretaker. Due to these circumstances, Ms. Quiroz Macedo would likely be eligible for cancellation of removal, but for this conviction.

Without the benefit of an evidentiary hearing, the habeas court granted the relief requested by the applicant. In so doing, the habeas court made the following Findings of Fact:

5

2.  On March 12, 2010, Applicant was charged in cause no. 10-01885-1 by information with the class A misdemeanor offense of possession of a controlled substance.

.    .    .

8.  The trial court has reviewed the affidavit of William Watson. The trial court finds Watson is a credible witness and the contents of his affidavit are credible.

.    .    .

15.  Based on Watson's affidavit, the court finds Watson did not fully advise Applicant of the immigration consequences of her guilty plea.

16.  The official record of this proceeding no longer exists due to the retention period passing.  [Footnote omitted].  Therefore, the trial court is unable to review the official court record to determine what oral admonitions were given by the Court.

17.  The trial court has reviewed the affidavit of immigration attorney, Patrick Espinosa.  The trial court finds Espinosa is a credible witness and the contents of his affidavit are credible.

18.  Espinosa is currently representing Applicant in ongoing immigration proceedings directly connected to her conviction in this case; therefore, is not a United States Citizen.

19.  Espinosa is representing Applicant currently in removal proceedings, facing deportation, and has not been at risk for deportation until recently.  Applicant's conviction in this matter automatically bars her from cancellation of removal.

The habeas court also made the following Conclusions of Law:

4.  The State has asserted the defense of laches.  For laches to bar relief, the State had to prove by a preponderance of the evidence that there was both unreasonable delay and prejudice resulting from that delay.  . . .  Delay alone is insufficient to establish the laches bar.  [Citations omitted].

5.  The State has not proven by a preponderance of the evidence that there was both unreasonable delay and prejudice resulting from that delay.  . . .  Therefore, the laches bar does not apply.  [Citations omitted].

6.  A record that establishes that the trial court properly admonished a habeas applicant presents a prima facie showing that the guilty plea was made voluntarily.

[Citations omitted].

7. The official record does not exist to determine if the Applicant was properly admonished a[s] to the immigration consequences of her guilty plea.

.  .  .

11. To render effective assistance of counsel to a deportable non-citizen, an attorney must admonish the non-citizen of the potential immigration consequences of a plea of guilty. . . . Failure to admonish a non-citizen of the potential immigration consequences arising from a plea of guilty constitutes ineffective assistance of counsel, and an involuntary plea of guilty, when the immigration consequences are 'succinct, clear, and explicit.' When immigration consequences are not succinct, clear and explicit, counsel need only inform his non-citizen client that a plea of guilty may carry adverse immigration consequences. [Citations omitted].

12. At the time of Applicant's plea, a second conviction for possession of controlled substance was considered an aggravated felony for immigration purposes in the Fifth Circuit. *Carachuri-Rosendo v. Holder*, 570 F.3d 263, 267-68 (5th Cir. 2005) . . . . Possession of controlled substance convictions and aggravated felony convictions have particularly severe consequences within the immigration context, such as precluding any discretionary relief.[5] [Citations omitted].

13. Applicant entered her plea on April 8, 2010. Applicant's attorney was required by *Padilla* to inform her of immigration consequences of her guilty plea. [Citations omitted].

14. Watson's performance fell below an objective standard of reasonableness when he failed to advise Applicant of the immigration consequences of her plea as required by *Padilla*. Applicant was prejudiced by Watson's failure to advise her of the substantial immigration consequences of her guilty plea. There is reasonable probability that but for the deficient performance, the result of the proceedings would have been different, and she would not have pleaded guilty and would have insisted on going to trial.

15. Applicant's plea of guilty in this case was involuntary under Article I §9 of the

---

[5] On June 12, 2010, Quiroz Macedo was released to her mother from the ICE detainer lodged against her when she was in jail for her March 9, 2010 arrest for possession of a controlled substance. Two days later, on June 14, 2010, the United States Supreme Court reversed the Fifth Circuit Court of Appeals and held that a defendant who has been convicted of a simple possession offense that has not been enhanced based on the fact of a prior conviction — as in this case —— has not been "convicted" under § 1229b(a)(3) of a "felony punishable" as such "under the Controlled Substances Act," 18 U.S.C.§ 924(c)(2) and thus was not to be considered an aggravated felony. *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 582 (2010).

Texas Constitution and under the Sixth and Fourteenth Amendments to the United States Constitution. Watson rendered constitutionally deficient advice to applicant by the failure to inform her of the immigration consequences of her guilty plea.

The relief requested is hereby **GRANTED**.

The State brought this appeal.

## II. DISCUSSION

The State has alleged two bases for habeas relief: (i) the habeas court erred in its application of the law regarding ineffective assistance of counsel under the prevailing standard of professional norms in 2010, and (ii) the habeas court erred when it determined that laches did not bar the Quiroz Macedo's claims for relief.

### A. DEFENSE OF LACHES

We will address the State's second issue first because it is dispositive of the appeal. The State contends that the record does not support the habeas court's rejection of the defense of laches. The State further argues the court misapplied the law and abused its discretion. We agree.

A trial court's decision to grant or deny post-conviction habeas relief is reviewed for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Peterson*, 117 S.W3d 804, 819 (Tex. Crim. App. 2003). We view the record in the light most favorable to the trial court's ruling and afford great deference to its findings and conclusions, especially if they involve determinations of credibility and demeanor. *Ex parte Saldana*, No. 03-09-00403-CR, 2010 WL 2789032 at*1 (Tex. App.—Austin July 16, 2010, no pet.) (mem. op., not designated for publication). "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted by this Court." *Ex parte Amezquita,* 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). The test for whether the trial court abused its discretion

8

is whether the ruling was arbitrary or unreasonable. *Ex parte Moreno,* 382 S.W.3d 523, 526 (Tex. App. —Fort Worth 2012, pet. ref'd). "If the resolution of the ultimate questions turns on an application of legal standards, we review the determination de novo." *Ex parte Saldana,* 2010 WL 2789032, at *1. We will reverse the trial court's ruling on an application for a writ of habeas corpus if the court's ruling is outside the zone of reasonable disagreement. *Ex parte Moreno*, 382 S.W.3d at 526.

A writ of habeas corpus is an extraordinary remedy. *See Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). "Habeas is governed by the elements of equity and fairness, and those elements require a consideration of unreasonable delay." *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014). Accordingly, the common-law doctrine of laches applies to habeas applications. *See Pastenes v. State*, No. 03-16-00102-CR, 2017 WL 2928112, at *2 (Tex. App. — Austin July 6, 2017, no pet.) (mem. op., not designated for publication).[6] The doctrine has been defined as "neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done." *Ex Parte Carrio*, 992 S.W.2d 486, 487 n.2 (Tex. Crim. App. 1999) (citing BLACK'S LAW DICTIONARY 875 (6th ed. 1990)). When determining whether laches applies, courts should "keep at the fore, the State's and society's interest in the finality of convictions, and consider the trial participants' faded memories and the

---

[6] Laches applies to any habeas case, regardless of which statute or provision applies. *Ex Parte Bowman,* 447 S.W.3d at 888. The trial court erred by finding the rulings were made "pursuant to Article 11.07, TEX. CODE CRIM. PRO. . . ." because the criminal charge to which Quiroz Macedo pled guilty was a misdemeanor — not a felony. This error makes no difference in our analysis.

diminished availability of evidence." [Footnote omitted]. *Ex parte Smith*, 444 S.W.3d at 666.

However, delay alone is insufficient to establish the defense of laches. *Ex parte Bowman*, 447 S.W.3d at 888. The burden to establish the defense of laches required the State to prove more. In considering an unreasonable delay, "courts should consider among other things, the length of applicant's delay in requesting equitable relief, the reasons for the delay, and the degree and type of prejudice borne by the State resulting from applicant's delay." *Ex parte Smith*, 444 S.W.3d at 666-67. Prejudice in this context includes "anything that places the State in a less favorable position, including prejudice to the State's ability to retry the defendant." *Id*. at 666. A "delay may be excused when the record shows that (1) an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect; (2) the State would not be materially prejudiced as a result of the delay; or (3) the applicant is entitled to equitable relief for other compelling reasons, such as new evidence that shows he is actually innocent of the offense." *Id*. at 667.

The habeas court made the following Finding of Fact that deals with laches:

19. Espinosa is representing Applicant currently in removal proceedings, facing deportation, and has not been at risk for deportation until recently. Applicant's conviction in this matter automatically bars her from cancellation of removal.

The court made the following Conclusion of Law concerning laches:

5. The State has not proven by a preponderance of the evidence that there was both unreasonable delay and prejudice resulting from the delay. Therefore, the laches bar does not apply. [Citations omitted].

The competent evidence in the record fails to support the habeas court's determination that laches did not bar Quiroz Macedo's writ application. The undisputed facts of this case establish

that Quiroz Macedo did not have legal status in the United States before her arrests.[7] She was restrained for habeas corpus purposes when the ICE detainer was filed against her on March 10, 2010. She was confined in jail exclusively because of the ICE detainer for two months. Following an immigration hearing she was released under "conditions of release" that she agreed to comply with. The record contains no evidence that she was ever discharged from those conditions. Quiroz Macedo's current immigration attorney acknowledged that he began working with her "around April 2014" and was working with her in an "ongoing immigration proceeding." Despite his representation commencing over six years before he signed his affidavit, he averred that "Ms. Quiroz Macedo has not been at risk for deportation until recently." The affidavit of the attorney was sparse and conclusory and does not set forth any factual basis that supports his legal conclusion. *See Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 299 (Tex. App.—Corpus Christi 2002, pet. denied) (Statements of subjective beliefs are no more than conclusions.); *Texas Commerce Bank, Nat. Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (Where affiant describes the scheme resulting in the bank's loss and identifies the total amount lost, the affidavit is not conclusory and is legally sufficient.). The affidavit does not reasonably explain the delay in filing the writ application nor meet any of the criteria for excusing the delay. *See Ex parte Smith*, 444 S.W.3d at 666-67. The unsupported and improper legal conclusion in the attorney's affidavit is not probative evidence sufficient to support the trial court's findings that Quiroz

---

[7] The dissent states that "In the record is Appellee's I-831 form from the U.S. Department of Homeland Security, in which it states . . . Appellee, a deportable, excludable alien, . . . due to her arrest of March 10, 2010—the underlying conviction[.]" Respectfully, we can find nothing in that document that specifically states that and any conclusion that the March 10 arrest had been determined to be the basis of a finding that Appellee was deportable or excludable would be by implication only. Even then we could not make the leap that such a finding was based on that arrest alone. For example, that same document reflects Quiroz Macedo admitted she entered the United States illegally and she had no legal status even before she allegedly committed crimes.

Macedo had not been at risk for deportation until recently and that the bar of laches does not apply. The attorney's affidavit is not competent evidence and does not overcome the undisputed evidence that Quiroz Macedo was continuously at risk for deportation.

The record reflects that Quiroz Macedo did not seek habeas relief until more than 119 months after she entered her plea of guilty and a full ten years after the ICE detainer restrained her. *Ex parte Perez*, 398 S.W.3d 206, 216 n.12 (Tex. Crim. App. 2013) (explaining "that delays of more than five years may generally be considered unreasonable in the absence of any justification for the delay."); *see also Ex parte Vasquez*, 499 S.W.3d 602, 614 (Tex. App. — Houston [1st Dist.] 2016, pet. ref'd) (stating that five years after conviction becomes final, availability of State's evidence and memories of individuals involved become diminished).

The habeas court also made the following Finding of Fact:

16. The official record of this proceeding no longer exists due to the retention period passing. Therefore, the trial court is unable to review the official court record to determine what oral admonitions were given by the Court. [Footnote omitted].

By making the finding, the habeas court found that the lapse of time between the plea and the filing of the application for writ of habeas corpus disadvantaged the court to the extent that it was impossible to know, based on an objective record, if Quiroz Macedo had received oral admonishments concerning the immigration consequences of her plea. The State attached an affidavit to its reply to the writ application prepared by the office administrator and assistant to the county attorney explaining that the records retention period for the Williamson County Attorney's office was seven years after the case was disposed of. She specifically addressed the case file for Quiroz Macedo in the possession of a controlled substance at issue and disclosed that the file and any evidence the office could use for prosecution had been destroyed. Just as the habeas court was

12

thwarted in its effort to obtain a record, the State was prevented from retrying this case.

The State argues that the habeas court misapplied the law when it failed to employ the sliding scale by which "the extent of the prejudice the State must show bears an inverse relationship to the length of the applicant's delay." *Ex parte Perez*, 398 S.W.3d at 217. The State proved by competent evidence that they would be prejudiced by granting the requested relief because the file and the evidence for the charge had been destroyed. "[T]he longer an applicant delays filing his application, and particularly when an applicant delays filing for much more than five years after conclusion of direct appeals, the less evidence the State must put forth in order to demonstrate prejudice." *Id*. at 217-18. By applying this approach, the courts are to consider the State's and society's interest in the finality of a conviction. *Id*. at 218. Although the applicant has attempted to justify her delay by claiming she only recently became subject to deportation, the competent evidence in the record does not support that position.[8] On the other hand, as discussed above, the record does reflect that the State proved an unreasonable delay in filing the writ application and that they were prejudiced by that delay. We find that the record does not support the grant of equitable relief in light of the excessive delay and applicant's failure to assert her rights for ten

---

[8] The dissent relies heavily on immigration counsel's statement in his affidavit that Quiroz Macedo has not been at risk for deportation until recently. We have recited why the facts and the competent evidence does not support that position. Unlike Jose Padilla, Appellee in this case was an undocumented immigrant and was subject to deportation for that reason alone. Entering a plea of not guilty, going to trial and even being acquitted would not have "transformed [her] into a legal resident." *Guerrero*, 400 S.W.3d 589; *Simon v. State*, No. 03-17-00215-CR, 2018 WL 3468688, at *7 (Tex.App.—Austin July19, 2018, no pet.) (mem. op., not designated for publication). While we agree with the dissent that despite her illegal status, Quiroz Macedo was entitled to effective assistance of counsel and proper admonishments under *Padilla*, these cases bear on whether she was only recently at risk for deportation. 559 U.S. at 369.

Further, the dissent relies on immigration counsel's completely unsupported statement that but for the underlying conviction barring her from cancellation of removal, she would "likely" be eligible due to her three-year-old son's rare chromosomal disorder. Once again, there is no legal authority to support this speculative statement. We do not even have a legal frame of reference as to what "likely" means. While we recognize the emotional tug supplied by this statement, we cannot be influenced to not apply the law.

13

years. *See Ex parte Perez*, 445 S.W.3d 719, 727 (Tex. Crim. App. 2014). Under the above discussed case law, as applied to the record before this court, we find that the habeas court's decision to grant the relief requested in the writ application was not supported by the record and was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. We sustain the State's second issue and hold that the application is barred by the equitable doctrine of laches.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In an abundance of caution and an effort to be comprehensive in our analysis, we will discuss the State's first issue. To prevail on a claim of ineffective assistance of counsel, a habeas applicant bears the burden to prove, by a preponderance of the evidence, both deficient performance by counsel and prejudice suffered by the applicant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Bowman*, 533 S.W.3d at 349. The applicant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Bowman*, 533 S.W.3d at 349. Appellate review of counsel's representation is highly deferential which requires we "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava v. State*, 415 S.W.3d 289, 307-08 (Tex. Crim. App. 2013). A writ applicant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment and then the court must determine whether those identified acts were outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. *See Bowman*, 533 S.W.3d at 349. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate"

14

the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). The applicant has the burden to further show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 307-08. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

A criminal defendant has a constitutional right to effective assistance of counsel in plea proceedings. *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). A guilty plea is not voluntary if made as a result of ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). In the context of a collateral challenge to a guilty plea, the focus of the prejudice inquiry is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process" and on whether a defendant has shown that "'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Padilla*, the Supreme Court expanded the scope of the Sixth Amendment to require an attorney for a non-citizen criminal defendant to provide advice about the risk of deportation arising

15

from a guilty plea. 559 U.S. at 360. We must apply *Padilla* in the context of the facts in the record on this collateral attack of Quiroz Macedo's plea of guilty.[9] A few facts warrant repeating. At all times, beginning when Quiroz Macedo entered the United States illegally, she was subject to removal.[10] Two days after trial counsel was appointed for Quiroz Macedo and eight days prior to her plea, the opinion in *Padilla v. Kentucky* was handed down by the Supreme Court. 559 U.S. 356.[11] On that same day, the Supreme Court heard argument in *Carachuri-Rosendo v. Holder*, "to resolve the conflict among the Courts of Appeals over whether subsequent simple possession offenses are aggravated felonies." 560 U.S. 563, 573. Two days after Quiroz Macedo was released from the ICE detainer to her mother, the Supreme Court handed down their opinion in *Carachuri-Rosendo* holding a second simple possession conviction that was not enhanced based on the fact of the prior conviction is not to be considered an aggravated felony. 560 U.S. at 573. The facts that comprise the context of this case are quite unique. Many of the cases relied on by Quiroz Macedo vary significantly in that the writ applicant had some form of legal status in this county at the time of their plea of guilty. Neither party cited, and we have not found, a similar case that took

---

[9] The dissent states that "[t]he majority . . . argue *Padilla* is inapplicable." To be clear, we take no such position, as stated above. *Padilla* was the law on the date Appellee entered her plea and the analysis used by the majority applied *Padilla.* 559 U.S. 356.

[10] In *State v. Guerrero*, the court of criminal appeals acknowledged that "[u]nlike Jose Padilla, [Guerrero] was an undocumented immigrant and was deportable for that reason alone…. Had [he] gone to trial with counsel and been acquitted he would not have been transformed into a legal resident. . . . The prospect of removal therefore could not reasonably have affected his decision to…plead guilty." 400 S.W.3d 576, 588-89 (Tex. Crim. App. 2013). *See Simon v. State*, No. 03-17-00215-CR, 2018 WL 3468688, at *7 (Tex. App.—Austin July 19, 2018, no pet.) (mem. op., not designated for publication) (The habeas court would not have abused its discretion in finding Simon's status as an undocumented immigrant and already subject to removal made it less likely that the prospect of removal would reasonably affect his decision to plead guilty.).

[11] In *Ex parte De Los Reyes*, the court of criminal appeals reasoned that "when the Supreme Court handed down *Padilla* . . . it broke new ground and imposed a new obligation." 392 S.W.3d 675, 679 (Tex. Crim. App. 2013). *See Ex parte Martinez*, No. 03-15-00334-CR, 2016 WL 4628056 (Tex. App. — Austin Aug. 31, 2016) (mem. op., not designated for publication) (Counsel's claimed error was not based on law that was well considered and clearly defined when based on directive by the Department of Homeland Security two months prior to Martinez's plea.).

place during a period of time when the law concerning immigration consequences and their interplay with a criminal plea of guilty was in such a state of transition or change. While it is inescapable to acknowledge all these facts, the resolution of this collateral attack does not rest on the volatility of the context in which the events occurred.[12]

"When a person attacks the validity of his prior guilty plea as that plea is reflected in the written judgment, he bears the burden of defeating the normal presumption that recitals in the written judgment are correct." *Guerrero*, 400 S.W.3d at 583. The written recitals are binding in absence of direct proof of their falsity. *Id*. The plea papers contained in the record before this Court show Quiroz Macedo was advised that her plea of guilty could result in deportation, exclusion from admission to this country, or a denial of naturalization under federal law. Quiroz Macedo signed the form containing that admonition acknowledging she had read and accepted the admonitions and she was aware of the consequences of her plea. Watson signed the same type of form and acknowledging that Quiroz Macedo was competent, understood the admonitions and the consequences of her plea. Under *Guerrero*, Quiroz Macedo bears the burden of rebutting the recitals in the plea papers she signed with competent evidence. *See id*.; *Ex parte Ahmad*, No. 14-16-00542-CR, 2017 WL 3158932, at *4 (Tex. App.—Houston [14th Dist.] July 25, 2017, no pet.) (mem. op., not designated for publication).

The habeas court made the following findings of fact:

8. The trial court has reviewed the affidavit of William Watson. The trial court finds Watson is a credible witness and the contents of his affidavit are credible.

---

[12] While we agree with the dissent that the timing of *Padilla w*ould not excuse ineffective assistance of counsel, we do not agree we focused on the time period when she entered her plea, as stated by the dissent. 559 U.S. 356. In fact, we specifically highlight how that timing does not in any way impact our resolution of this case. Instead, we find that the habeas court erred in finding that Watson's affidavit was sufficient competent evidence to support its ruling that Watson did not provide effective assistance of counsel.

17

.    .    .

15. Based on Watson's affidavit, the court finds Watson did not fully advise Applicant of the immigration consequences of her guilty plea.

Mr. Watson was appointed by the court to represent Quiroz Macedo. In his affidavit, Watson does not make reference in any way to what he did or did not advise his client of concerning the immigration consequences of her plea. In fact, he never mentions Quiroz Macedo or her case at all. While he explained that he only practiced criminal law for a short period of time and that he never practiced immigration law or consulted an immigration attorney about specific immigration consequences of guilty pleas, he does not in any way state that he did not inform Quiroz Macedo of the immigration consequences of her plea. Certainly, Watson could have informed the court if he had not advised his client of the collateral immigration consequences of her plea of guilty if that were true, but he did not. In fact, he did not admit to anything that on the face of the affidavit would amount to ineffective assistance of counsel.[13] At best, the affidavit raised only speculation of a failure by Watson. The habeas court erred in finding that Watson's affidavit was sufficient proof that Watson did not advise his client of the immigration consequences of her plea. The affidavit alone did not satisfy the applicant's burden of proof to overcome the presumption of regularity or to prove deficient performance. Since the habeas court explicitly based her ruling on the affidavit, the ruling is not supported by competent evidence.[14]

---

[13] The writ application seems to allege that the failure of Watson to consult an immigration attorney amounted to ineffective assistance of counsel. Watson did state in his affidavit that he never consulted with immigration attorneys about specific immigration consequences. In *Ex parte Aguilar*, the court of criminal appeals held that it was anticipated and expected that counsel may need to confer with an immigration attorney concerning the effect of a guilty plea on a noncitizen, but the court did "not demand" attorneys representing criminal defendants to rely on their immigration-law counterparts when representing noncitizens. 537 S.W.3d 122, 127-28 (Tex. Crim. App. 2017).

[14] In her affidavit, Quiroz Macedo stated "Mr. Watson did not inform me of the immigration consequences of my plea." The habeas court did not and could not attribute any weight to the statement. *See Arreola v. State*, 207 S.W.3d

18

*See Guerrero*, 400 S.W.3d at 583-84.

Applicant further failed to prove the prejudice prong of *Strickland*. 466 U.S. 668 (1984). The prejudice prong requires the applicant in this case to show that there is a reasonable probability that, but for counsel's error, she would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. If we were to assume that Quiroz Macedo's counsel did render deficient legal advice, we still would not find that the applicant proved ineffective assistance of counsel.

In Quiroz Macedo's affidavit, she included one sentence that weighs on this portion of this analysis: "Had I been advised of these immigration consequences, I would not have entered the plea agreement, and would have taken my case to trial." Quiroz Macedo did not offer any sworn evidence on this issue other than her own affidavit. "Surmounting *Strickland's* high bar is never an easy task." *Padilla*, 559 U.S. at 371. The strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

The dissent focuses on Appellee's affidavit in the analysis of the prejudice component of *Strickland*. 466 U.S. at 692.[15] While we focus on that same affidavit, we reach a different

---

387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (The defendant's uncorroborated testimony that he was misinformed by counsel is not sufficient to show his plea is involuntary.).

[15] The dissent further asserts that we failed to offer case law in support of our position that Appellee's affidavit alone fails to meet her burden to show prejudice. Since the habeas court ruled on this application without the benefit of a hearing, all testimony was provided by affidavit. Whether sworn testimony comes in the form of an affidavit or in person before a judge is a difference without a distinction. The same holds true for whether the affidavit supports a finding of ineffective assistance or prejudice. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Further, "as a matter of law, reviewing courts defer to the trial court's implied factual findings that are supported by the record, even when no witnesses testify and all of the evidence is submitted in written affidavits." *Ex parte Wheeler*, 203 S.W.3d 317 (Tex. Crim. App. 2006) [Emphasis added]. We have cited to case law that supports our finding that Quiroz Macedo's affidavit alone was insufficient to prove the prejudice prong of *Strickland*. 466 U.S. at 692.

19

conclusion concerning the sufficiency of that evidence. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). *See Simon*, 2018 WL 3468688, at *6 (Judges should not upset a plea based on *post hoc* assertions from a defendant about how he would have pled if his counsel had not been deficient but should instead rely on evidence to corroborate the defendant's expressed preferences.); *Arreola*, 207 S.W.3d at 391; *Fimberg v. State*, 922 S.W.2d 205, 208 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd) ("However exceptional the circumstances, a defendant's claim he was misinformed by counsel, standing alone, is not enough for us to hold his plea was involuntary."); *Paschal v. State*, No. 02-20-00073-CR, 2021 WL 3795955, at *2 (Tex.App.—Fort Worth Aug. 26, 2021, no pet.) (mem. op., not designated for publication) ("A defendant's uncorroborated testimony about his counsel's errors is insufficient to establish ineffective assistance."); *Ex Parte Colson*, No. 07-16-00447-CR, 2017 WL 4341449, at *3 (Tex.App.—Amarillo Sept. 29, 2017, no pet.) (mem. op., not designated for publication) ("The uncorroborated testimony of a defendant that counsel misinformed her is insufficient to establish her plea was involuntary."). The applicant could not support her position by producing the court reporter's record due to the retention policy of seven years and the filing of the application delay of ten years. There were no other affidavits, associated exhibits or documents to support the bald assertion of Quiroz Macedo. Her affidavit alone fails to meet the burden to show prejudice. The habeas court abused its discretion by finding Watson provided ineffective assistance of counsel.

## C. CONCLUSION

Having found that the writ application is barred by the equitable doctrine of laches, we reverse and render a judgment denying Quiroz Macedo's application for habeas relief.

August 15, 2022
LEE GABRIEL, Justice (Ret.)

Before Rodriguez, C.J., Alley, J., and Gabriel, J. (Ret.)
Gabriel, J. (Ret.)(Sitting by Assignment)
Rodriguez, C.J., Dissenting

(Do Not Publish)