

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-79,465-01

### EX PARTE AL LETROY SMITH, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM THE CAUSE NO. 43,698-01-A IN THE 47TH DISTRICT COURT
### POTTER COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., PRICE, HERVEY, COCHRAN, and ALCALA, JJ., joined. MEYERS, J., filed a dissenting opinion. WOMACK, J., concurred. JOHNSON, J., dissented.

### O P I N I O N

Applicant Al Smith waited over ten years to claim in an application for a writ of habeas corpus that his rights to direct appeal and effective assistance of counsel were denied. Although the State did not plead laches in its answer to Smith's application, we hold that a court may consider *sua sponte* whether laches should bar an applicant's claim. We further hold that the current record supports a *sua sponte* laches inquiry. Smith's application is remanded to the habeas court to give Smith an opportunity to explain his delay and for the entry of findings of fact and conclusions of law.

## I.

In June 2002, a jury found Smith guilty of assault on a public servant, and the judge sentenced him to a term of eight years' confinement to run consecutively with another conviction. Appellate counsel was subsequently appointed, but no appeal was taken. In March 2013, Smith filed an application for a writ of habeas corpus pursuant to Texas Code of Criminal Procedure Article 11.07 alleging that he was denied his rights to appeal and effective assistance of appellate counsel. In April 2013, the State filed its answer generally denying Smith's allegations and further informing the trial court that the State requested a response from appellate counsel it had not yet received. The State's answer did not plead laches or any theory of the case beyond a general denial.

Smith's application was forwarded to this Court without any findings of fact and conclusions of law entered by the habeas judge. We remanded the application to the habeas court to make findings and conclusions as to "whether [Smith] was denied his right to a meaningful appeal because [Smith's] counsel failed to timely file a notice of appeal."[1] After considering appellate counsel's affidavit, in which he stated that he had no personal recollection of the case and that his file did not contain a notice of appeal, the habeas judge found that appellate counsel failed to invoke the court of appeals' jurisdiction. The judge concluded that Smith received ineffective assistance of appellate counsel and recommended that Smith be permitted to file an out-of-time appeal. The State did not object to the findings

---

[1] *Ex parte Smith*, Order, No. WR-79,465-01 (Tex. Crim. App. June 12, 2013).

or conclusions. On our own motion, we ordered Smith's application be filed and set to determine "whether the State must plead laches for a court to consider it in determining whether to grant equitable relief."[2]

## II.

We have long acknowledged that the writ of habeas corpus is of common-law origin and governed by common-law equitable principles.[3] Indeed, the earliest government of an independent Texas explicitly embraced English common law in this regard: "Every Judge, so nominated and commissioned, shall have jurisdiction over all crimes and misdemeanors recognized and known to the common law of England: he shall have power to grant writs of 'habeas corpus' in all cases known and practised, to and under the same laws[.]"[4] This extraordinary and prerogative writ[5] was so named because, while "it cannot be employed as a substitute for appeal," "it seeks to relieve the petitioner from a wrongful act by anticipating

---

[2] *Ex parte Smith*, Order, No. WR-79,465-01 (Tex. Crim. App. Nov. 24, 2013).

[3] *Ex parte Perez*, 398 S.W.3d 206, 210–11 (Tex. Crim. App. 2013); *Ex parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012).

[4] PLAN AND POWERS OF THE PROVISIONAL GOVERNMENT OF TEXAS, ORDINANCES AND DECREES OF THE CONSULTATION, PROVISIONAL GOVERNMENT OF TEXAS, AND THE CONVENTION: WHICH ASSEMBLED AT WASHINGTON, MARCH 1, 1836 (Houston, Niles & Co. 1838), *available at* http://tarlton.law.utexas.edu/constitutions/dpppgt1836/plan (last visited September 29, 2014).

[5] BRYAN GARNER, BLACK'S LAW DICTIONARY, 1845 (10th ed. 2014) ("A writ issued by a court exercising unusual or discretionary power. Examples are certiorari, habeas corpus, mandamus, and prohibition.—Also termed *prerogative writ*.").

and superseding the ordinary course of legal procedure."[6] At common law, it was "principally applied to remedy defects in the common-law proceedings; and therefore that equity jurisprudence was entertained upon the same ground which now constitutes the principal reason of its interference, *viz.*, that a wrong is done, for which there is no plain, adequate, and complete remedy [at law]."[7] Without legislation or case law altering the scope of habeas corpus and the relief that may be granted, we fall back on the contours of habeas corpus at common law.[8] Although the modern writ has been subjected to significant change, it has predominantly been procedural, with the most noticeable exception of precluding merits review of subsequent applications.[9] On balance, the modern writ of habeas corpus remains true to its ancient origins with its focus on fairness.[10] As we have noted, the Texas

---

[6] 2 THOMAS CARL SPELLING, A TREATISE ON EXTRAORDINARY RELIEF IN EQUITY AND AT LAW, § 1151 (Boston, Little, Brown & Co. 1893). *Accord Ex parte Townsend*, 137 S.W.3d 79, 81–82 (Tex. Crim. App. 2004); *Ex parte Wilcox*, 79 S.W.2d 321, 321 (Tex. Crim. App. 1935) ("Habeas corpus is an extraordinary writ, and the general rule is that it does not lie where relief may be had, or could have been procured by resort to another remedy.").

[7] 1 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE AS ADMINISTERED IN ENGLAND AND AMERICA § 49 (Boston, Little, Brown & Co. 1918).

[8] *See Ex parte Mines*, 26 S.W.3d 910, 911 (Tex. Crim. App. 2000).

[9] *See generally* TEX. CODE CRIM. PROC. art. 11.01 *et seq.*; TEX. R. APP. P. 73.1 *et seq.*

[10] *See, e.g.*, *Ex parte De Leon*, 400 S.W.3d 83, 90 (Tex. Crim. App. 2013) (citing, *Shannon v. State*, 708 S.W.2d 850, 851–52 (Tex. Crim. App. 1986), which concluded that fairness required specific performance, specifically a plea's withdrawal, when a defendant successfully challenges a conviction); *Ex parte Riley*, 193 S.W.3d 900, 902 (Tex. Crim. App. 2006) (finding that applicant's lack of notice of ability to file a petition

Constitution does not "guaranty a right to habeas corpus relief that is broader than that available at common law."[11] It is with this origin in view that we address the issue before us today.[12]

The concept that delay in seeking relief may, in certain instances, adversely affect an applicant's request for habeas corpus relief was first expressed in terms other than a formal recognition of the equitable defense of laches. In *Ex parte Young*, we stated that, "While we do not desire to make an absolute rule concerning habeas corpus petitioners who do not assert their legal remedies promptly, we nevertheless feel that in some instances, a petitioner's delay in seeking relief can prejudice the credibility of his claim."[13] In *Young*, we noted that Young had waited eight and a half years before complaining that counsel failed to file an appeal on his behalf despite being aware that he had such a right.[14] Our denial of Young's application turned in part on several factors owing to his delay to bring his complaint: the unavailability of the trial record of his eleven-year-old conviction and the inability to fully

---

for discretionary review did not rise to the level of ineffective assistance of counsel, but nonetheless granting relief on "a breakdown in the system").

[11] *Ex parte Mines*, 26 S.W.3d at 914.

[12] *See* 2 A Treatise on Extraordinary Relief in Equity and Law § 1190 ("The real purpose for which habeas corpus was at first designed needs to be kept constantly in view in order to clearly understand the principles governing its use and the occasions when a party invoking it is entitled to relief though its instrumentality.").

[13] 479 S.W.2d 45, 46 (Tex. Crim. App. 1972); *accord Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

[14] *Ex parte Young*, 479 S.W.2d at 46.

explore the failure to appeal because of participants' death and the erased memories of others.[15]

Our first direct exposition on the laches doctrine's effect on an applicant's request for habeas corpus relief is found in *Ex parte Carrio*. In addressing the State's pleaded theory of laches, the *Carrio* Court recognized that an applicant's claim for relief had never before been denied under the laches doctrine and the Court has had no desire to impose upon an applicant a specific time period to assert his claim.[16] We looked to Black's Law Dictionary's definition of "laches":

> The doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done.[17]

Concluding that "the doctrine of laches is a theory which we may, and should, employ in our determination of whether to grant relief in any given 11.07 case," this Court in essence adopted the federal approach found in Rule 9(a) of the Rules Governing 28 U.S.C. § 2254 Cases.[18] In effect, *Carrio* required the State to go beyond what would have been required to

---

[15] *Id.* at 47.

[16] *Ex parte Carrio*, 992 S.W.2d 486, 487 (Tex. Crim. App. 1999) (relying in part on *Ex parte Young*, 479 S.W.2d at 46).

[17] *Id.* at 487 n.2 (citing BLACK'S LAW DICTIONARY 875 (6th ed.1990)).

[18] *Ex parte Perez*, 398 S.W.3d at 212.

raise laches at common law by (1) requiring the State to make a particularized showing of prejudice and (2) limiting the type of prejudice the State may show to prejudice to its ability to respond to the claims raised in an application.[19]

Just two terms ago in *Ex parte Perez*, we abandoned *Carrio*'s embrace of the federal approach in favor of a return to the common law's equitable principles that animate the laches doctrine.[20] After *Perez*, the State is no longer required to make a particularized showing of prejudice, and the definition of prejudice has now expanded to include anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant.[21] The reasons for the restoration were many: The persuasiveness of the authorities *Carrio* relied upon had been undermined by the imposition of a strict statute of limitations for federal habeas claims, and the federal standard proved to be too rigid to serve effectively as an equitable standard.[22] But more importantly, the federal standard deviated from the general principles of common-law equity.[23]

"[T]he writ of habeas corpus is an extraordinary remedy, any grant of which must be

---

[19] *Id.* at 212–13. *See Ex parte Carrio*, 992 S.W.2d at 487–88.

[20] 398 S.W.3d at 215.

[21] *Id.*

[22] *Id.* at 213–15.

[23] *See id.* at 216.

underscored by elements of fairness and equity."[24] To determine whether equitable relief should be granted then, it behooves a court to determine whether an applicant has slept on his rights and, if he has, whether it is fair and just to grant him the relief he seeks.[25] The expanded approach ensures that courts keep, at the fore, the State's and society's interest in the finality of convictions,[26] and consider the trial participants' faded memories and the diminished availability of evidence.[27] In these case-by-case inquiries, courts should consider, among other things, the length of applicant's delay in requesting equitable relief, the reasons for the delay, and the degree and type of prejudice borne by the State resulting from applicant's delay.[28] But equity does not require that an applicant be barred from relief by mere delay alone. In *Perez*, we held that delay may be excused when the record shows that (1) an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect; (2) the State would not be materially prejudiced as a result of the delay; or (3) the applicant is entitled to equitable relief for other compelling reasons, such as new

---

[24] *Id*. at 216.

[25] *Id*. at 218.

[26] *Id*. at 218.

[27] *Id*. at 216 (citing *Ex parte Steptoe*, 132 S.W.3d 434, 437–39 (Tex. Crim. App. 2004) (Cochran, J., dissenting)).

[28] *Id*. at 217.

evidence that shows he is actually innocent of the offense.[29] But in *Perez*, we specifically declined to address the issue in the present case.

For the same reasons that we abandoned the federal approach to laches, we now hold that a court may *sua sponte* consider and determine whether laches should bar relief. In a civil suit in equity, the United States Supreme Court stated long ago that,

> To let in the defence that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive, and refuse relief. . . .
>
> A court of equity, which is never active in giving relief against conscience or public convenience, has always refused its aid to stale demands where a party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced; and, therefore, from the beginning of this jurisdiction there was always a limitation to suits in this court.[30]

More recently, the Supreme Court expressed a similar sentiment: "Among [the governing equitable principles of habeas corpus] is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. Narrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative

---

[29] *Id.* at 218 (citing *Ex parte Scott*, 190 S.W.3d 672, 675 (Tex. Crim. App. 2006) (Cochran, J., dissenting) and *Ex parte Blue*, 230 S.W.3d 151, 170 (Tex. Crim. App. 2007) (Keller, P.J., concurring)).

[30] *Sullivan v. Portland & Kennebec R.R. Co.*, 94 U.S. 806, 811–12 (1876) (citations and quotations omitted).

remedy for detentions contrary to fundamental law, the principle is unexceptionable."[31] And as Judge Cochran has noted, the path to a habeas corpus remedy is a costly one, exacting enormous societal and administrative costs.[32] Protracted habeas corpus litigation defers convictions' finality, "undermines confidence in the integrity of our procedures and inevitably delays and impairs the orderly administration of justice."[33] This in turn weakens the criminal law's deterrent and rehabilitative functions.[34] "There must come a time when a criminal conviction is final, when the deterrent effects of certainty and immediacy of punishment outweigh an inmate's right to endlessly litigate an appeal of his conviction."[35] Moreover, a significant amount of judicial time, effort, and resources is expended in addressing the nearly 5,000 applications for writs of habeas corpus this Court received just last fiscal year,[36] to say nothing about the equally taxing obligations of the lower courts in conducting proceedings, entering findings of fact and conclusions of law, and making

---

[31] *Fay v. Noia*, 372 U.S. 391, 438 (1963), *overruled on other grounds by Wainwright v. Skyes*, 433 U.S. 72 (1977).

[32] *Steptoe*, 132 S.W.3d at 437–38 (Cochran, J., dissenting).

[33] *Id.* at 438 (citing *Custis v. United States*, 511 U.S. 485, 497 (1994)) (alterations omitted).

[34] *Id.* at 438–39

[35] *Id.* at 438.

[36] OFFICE OF COURT ADMINISTRATION, ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY, FISCAL YEAR 2013, 30 (2014), *available at* http://www.courts.state.tx.us/pubs/AR2013/cca/2-cca-activity090113.pdf (last visited September 29, 2014).

recommendations on an applicant's request for relief. When a court is called upon to issue equitable relief, the State's failure to formally plead laches does not restrict a court's ability to balance equities beyond those that the parties advocate. A court may consider *sua sponte* the interests of the judicial system and society generally because they implicate values that may stretch beyond the concerns of the parties.[37] Permitting courts to freely inquire about an applicant's delay broadly effectuates the maxim that "he who seeks equity must do equity."[38]

Our holding should not be interpreted to suggest that all writ applications should be subjected to such scrutiny. Whether a habeas court properly raises laches calls for an elusive answer in the abstract. With its consideration of the totality of circumstances, the nature of equity itself defies definitive parameters. However, the habeas court should act on its own sparingly, questioning only those applications demonstrating an excessive delay that undermines or obstructs the principles and virtues the criminal-justice system promotes.

Smith contends that permitting *sua sponte* consideration of laches is inappropriate because it discords with our statutes and that laches is considered an affirmative defense and must be pleaded by the State. Smith argues that a *sua sponte* review of laches conflicts with

---

[37] *Cf. Day v. McDonough*, 547 U.S. 198, 205–206 (2006) (stating that the federal habeas corpus statute's limitations period promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state-court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time).

[38] JOHN NORTON POMEROY, A TREATISE ON EQUITABLE REMEDIES, § 21 (1905).

or is implicitly precluded by Texas Code of Criminal Procedure Articles 2.01 and 1.27. Article 2.01 provides, as Smith quotes, "It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done." The argument goes that "the prosecutor may properly decide that, on the basis of [certain] information or even surmise, his or her ethical duty to 'see that justice is done' entails omitting laches from the pleadings."[39] We see no inherent conflict between a prosecutor's strategic motive and perceived ethical responsibility and a court's ability to consider laches *sua sponte*. This contention discounts society's interest in finality of convictions, the preservation of judicial resources, and the criminal law's deterrent and rehabilitative functions—values that may be beyond the concern of the parties in a particular case—and misplaces the onus solely on the State to vindicate those interests. Society's interests endure despite the State's silence on them. Nor does our holding run afoul of Article 1.27 stating that "[i]f this Code fails to provide a rule of procedure in any particular state of case which may arise, the rules of the common law shall be applied and govern." As provided above, our approach is consistent with the common-law notion that a habeas judge should balance all equitable interests, pleaded and unpleaded.

Smith next claims that habeas corpus proceedings are civil in nature, and as a result the pleading rules should be governed by the Texas Rules of Civil Procedure, namely Rule

---

[39] Smith Br. at 8.

94.[40] He argues that under Rule 94 the State's failure to assert a laches theory barring relief in its responsive pleading means that the laches doctrine has been forfeited and is not in the case. Smith's characterization of habeas corpus proceedings may be correct at least in terms of the writ's historical notions. His ultimate conclusions, however, are not. As Smith concedes, we have held that habeas corpus is primarily a criminal proceeding and the Texas Rules of Civil Procedure do not ordinarily apply.[41] Despite Smith's arguments to the contrary, we decline to make an exception here, especially in light of the varied equity interests at play that may extend beyond the parties' arguments. To the extent Smith's arguments can be interpreted as asserting that laches's common-law provenance carries with it common-law pleading requirements, we find it unpersuasive. Whatever can be said about the common law's procedural requirements, they have not survived subsequent changes in case law, the enactment of statutes, and the adoption of rules specifically addressing habeas corpus pleadings and procedure.[42] Code of Criminal Procedure Chapter 11 and Rule of

---

[40] TEX. R. CIV. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . laches . . . and any other matter constituting an avoidance or affirmative defense.").

[41] *Ex parte Reick,* 144 S.W.3d 510, 516 (Tex. Crim. App. 2004) ("Such proceedings are categorized as 'criminal' for jurisdictional purposes, and the Texas Rules of Civil Procedure do not ordinarily apply."). *But see Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (applying Rule of Civil Procedure 18(a) for judge recusals in criminal cases).

[42] *See* TEX. CODE. CRIM. PROC. art. 1.27 ("If this Code fails to provide a rule of procedure in any particular state of case which may arise, the rules of the common law shall be applied and govern.").

Appellate Procedure 73.1 explicitly detail how an applicant seeks habeas corpus relief, where the application is to be filed, the form an application must take, and the procedural process in the habeas court and this Court upon the application's filing.[43] Notable among these requirements and most germane to Smith's contention, is Article 11.07, § 3(b)'s language that arguably does not require that the State file an answer to an application at all. Section 3(b) compels the clerk to forward a copy of the application to the State "who shall answer the application not later than the 15th day after the date the copy of the application is received." But this passage is immediately followed by what amounts to a presumed general denial even when the State fails to answer: "Matters alleged in the application not admitted by the state are deemed denied." It therefore makes little sense to obligate the State, contrary to what the statute requires, to specifically plead a laches theory that bars an applicant relief.

**III.**

While equity may ultimately require denying relief, it nonetheless requires giving the applicant an opportunity to explain his delay.[44] An applicant must be afforded this opportunity—irrespective of whether the State alleges the delay disadvantages its own position—before a court recommends or concludes that laches compels the application's denial. In a *sua sponte* laches inquiry, a court may excuse an applicant's delay when the

---

[43] *Id.* art. 11.07, §§ 3–7; TEX. R. APP. P. 73.1 (providing an application must be on the form adopted by this Court, restricting the application's contents, length, and typeface, and mandating a certificate of compliance and verification).

[44] *See Ex parte Perez*, 398 S.W.3d at 218.

record demonstrates that his delay was the result of justifiable excuse or excusable neglect based on the totality of circumstances, or other compelling reasons entitle him to relief, such as newly available evidence or a new legal basis for relief.

**IV.**

Smith was convicted of assault on a public servant in June 2002. Ten and a half years elapsed before Smith filed his March 2013 application for habeas corpus relief claiming that he was denied his right to appeal and effective assistance of appellate counsel. Relying on counsel's affidavit, the habeas judge found that counsel had no independent recollection of the facts surrounding Smith's appeal and counsel's file did not contain a notice of appeal. From this, the habeas judge concluded that Smith's right to appeal was denied and recommended that relief be granted.

From Smith's application alone it appears quite clear that he was aware of his right to appeal. He states that he was advised of his right to appeal in July 2002. He further states that "On or about the 1st day of September, 2002" he "was concerned about his appeal and wrote to [the] State Counsel[] for Offenders regarding the stat[u]s of his appeal[.]"[45] "On numerous occasions" Smith attempted to contact his appointed appellate counsel to no avail, although he does not place his attempts within a certain time period.[46] Over nine years later in March 2012, Smith contacted the Potter County District Clerk's Office to ask about the

---

[45] Smith Appl. Att. at 6.

[46] *Id.*

status of his appeal. In August and September 2012, he learned from the District Clerk's Office and the court of appeals, respectively, that no notice of appeal had been filed in his case. In March 2013, he filed the present application.

A ten-and-a-half year delay is extraordinary. From the current state of the record and assuming Smith's statements in his application are accurate, it is hard to escape the conclusion that he slept on his rights with full awareness of them. At a minimum, the delay is significant enough for this Court to justly ask whether Smith's claim should be precluded by laches.[47] However, because the record is silent on the circumstances that may excuse this substantial delay, we reserve judgment as to whether laches bars Smith's request for relief until he is given an opportunity to explain his delayed application.

Accordingly, we remand this application to the habeas court to make findings of fact and conclusions of law consistent with this opinion, the resolution of which shall be completed within 90 days of this opinion. In addition to the habeas judge's supplemental findings of fact and conclusions of law, a supplemental record containing all affidavits, interrogatories, documents, and transcripts from any hearing or deposition shall be forwarded to this Court within 120 days of this opinion.

This application is held in abeyance pending further habeas-court proceedings.

---

[47] *See Ex parte Perez*, 398 S.W.3d at 216 & n.12 (generally accepting that an unexplained five-year delay will usually be considered unreasonable).

DELIVERED: October 1, 2014

PUBLISH