

# In the Court of Criminal Appeals of Texas

NOS. WR-16,721-11, WR-16,721-12, WR-16,721-13 & WR-16,721-14

EX PARTE RONALD DALE EITEL,

*Applicant*

On Applications for Writs of Habeas Corpus
Cause Nos. 364014-E, 356103-E, 364015-E & 356099-E
in the 263rd District Court
From Harris County

YEARY, J., filed a concurring opinion, in which SLAUGHTER, J., joined.

Applicant was convicted in 1982 of two counts of rape and two counts of aggravated sexual abuse. He was sentenced to twenty years' imprisonment on the rape charges and sixty years' imprisonment on the aggravated sexual abuse charges. The First Court of Appeals affirmed

his convictions in 1983. *Eitel v. State,* Nos. 01-82-00880-CR; 01-82-00881-CR; 01-82-00882-CR; 01-82-00883-CR (Tex. App.—Houston [1st Dist.] Nov. 23, 1983) (not designated for publication). In October of 2013, Applicant filed these subsequent applications for writ of habeas corpus in the county of conviction. TEX. CODE CRIM. PROC. art. 11.07. In these applications, he alleges that his plea was involuntary because his counsel told him that forensic serology reports did not exclude him as the perpetrator of the assaults, when in fact, five of the six tests did exclude him as the perpetrator. Applicant further alleges that he would not have pled guilty but for counsel's misrepresentations.

Today, the Court remands this application to the trial court to further develop the record. I join the Court's remand order. But I write separately to address my thoughts concerning the doctrine of laches and its possible application to this case. *See Ex parte Smith*, 444 S.W.3d 661 (Tex. Crim. App. 2014) (holding a trial court has the authority to *sua sponte* consider the doctrine of laches); *Ex parte Bazille*, ___ S.W.3d ___, No. WR-89,851-02, 2022 WL 108348 (Tex. Crim. App. Jan. 12, 2022) (Yeary, J., concurring).

The doctrine of laches ought to be considered in a case like this one. Applicant's appeal was finalized in 1983, but these writ applications were not filed until almost thirty years later.[1] The record includes an affidavit in which Applicant claims that after sentencing he quickly

---

[1] "Our revised approach will permit courts to more broadly consider the diminished memories of trial participants and the diminished availability of the State's evidence, both of which may often be said to occur beyond five years after a conviction becomes final." *Ex parte Perez*, 398 S.W.3d 206, 216 (Tex. Crim. App. 2013) (citing *Ex parte Steptoe*, 132 S.W.3d 434, 437–39 (Tex. Crim. App. 2004) (Cochran, J., dissenting)).

began a "fervent search" for the serology reports by hiring two investigators and three lawyers starting in 1984. Writ Record, at 41-44. However, Applicant admits that he successfully obtained the serology reports in October of 2000, thirteen years prior to filing these writ applications. Even assuming that the delay in filing from when Applicant's appeal was finalized in 1983 until Applicant obtained the serology results is justifiable, at least some explanation for the long delay in filing after Applicant obtained the serology results should be provided.

Consistent with this Court's precedent, the trial court "may *sua sponte* consider and determine whether laches should bar relief." *Smith*, 444 S.W.3d at 667. If the trial court does so, it must give Applicant the opportunity to explain the reasons for the delay and give the State's prosecutors and/or former counsel for Applicant an opportunity to state whether Applicant's delay has caused any prejudice to their ability to defend against Applicant's claims. *Id*. at 670. And ultimately, the trial court may include findings of fact and conclusions of law concerning the doctrine of laches in its response to this Court's remand order.

With these additional thoughts, I join the Court's order.


**FILED:**                                      December 7, 2022
**DO NOT PUBLISH**