

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-22-00237-CR |
| | § | Appeal from the |
| EX PARTE: | § | 171st Judicial District Court |
| JASON JONES | § | of El Paso County, Texas |
| | § | Cause No. 970D08935-171-1 |

## MEMORANDUM OPINION

Appellant Jason Jones filed an application for habeas corpus relief, requesting a 1998 judgment of deferred adjudication be vacated on the grounds of ineffective assistance of counsel, involuntary plea, and a claim of actual innocence. The trial court denied Jones a hearing, and denied, as well, his request for habeas relief. He appeals those rulings. Finding no error, we affirm.

## I. BACKGROUND

In 1997, Jones was indicted on one count of indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). The indictment alleged that Jones intentionally and knowingly engaged in sexual contact with the complainant, who was younger than 17 years of age, by touching the anus of said complainant. On March 20, 1998, pursuant to a plea agreement, Jones pleaded guilty to the allegations as charged by the indictment. In accordance with the plea agreement, Jones waived his right to trial by jury, to which the State consented and approved. The

State recommended the trial court defer a finding of guilt, place Jones on deferred adjudication for eight years, order 200 hours of community service, prohibit his contact with the complaining witness, and require his participation in a sex offender program.

The trial court accepted Jones's guilty plea and entered an order deferring adjudication of guilt in accordance with the provisions of Article 42.12, Section 5(a) of the Texas Code of Criminal Procedure. Without entering a judgment of guilt, the trial court deferred further proceedings and ordered that Jones be placed on probation for a period of 8 years under the terms and conditions set out in an attached exhibit. On the same day, Jones signed a Texas Department of Public Safety Sex Offender Registration notice in which he reported he had received deferred adjudication for eight years on a charge of indecency with a child by contact. Item 31 of the pre-printed registration form included a box with a check mark indicating that verification was required annually, with a handwritten "lifetime" included in the space nearby.

Thereafter, on May 8, 2006, a community supervision officer reported to the trial court that Jones had successfully completed the period of community supervision under Article 42.12, Section 5(c) of the Texas Code of Criminal Procedure. On May 11, 2006, the trial court then signed and entered an order discharging Jones from community supervision under deferred adjudication and "ordered, adjudged, and decreed that the proceedings entered against [Jones] in this case be hereby dismissed."

In 2022, more than 24 years after pleading guilty under deferred adjudication, and more than 16 years after the dismissal of his case, Jones filed an application for writ of habeas corpus in the deferred adjudication trial court under Article 11.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. Jones noted, "[w]hile 11.072 does not have a custody requirement, Applicant is restrained by lifetime sex offender registration." Asking the trial court to entertain challenges to the validity of proceedings, Jones alleged four bases for relief: (1)

2

the trial court lacked jurisdiction because he was a juvenile at the time of the alleged offense; (2) he was actually innocent of the charged offense; (3) he was deprived of effective assistance of counsel at trial as constitutionally guaranteed; and (4) his plea was involuntary in violation of his constitutional rights. On these bases, Jones requested the trial court issue a writ of habeas corpus, conduct a hearing on the grounds for relief, and "set aside the Applicant's conviction in this case." Responding to the application, the State asserted, among other things, that laches barred Jones's claims.

The trial court did not hold an evidentiary hearing on Jones's habeas application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 6(b)-(c). It denied the relief sought by Jones and issued findings of fact and conclusions of law. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a). This appeal followed.

## II.   STANDARD OF REVIEW

We apply an abuse of discretion standard when reviewing a trial court's decision to grant or deny habeas corpus relief. *Ex parte Wheeler*, 203 S.W.3d 317, 323–24 (Tex. Crim. App. 2006). We view the facts in the light most favorable to the trial court's ruling and defer to the trial court's implied factual findings supported by the record. *Id.* at 325–26. This degree of deference applies even where, as here, "no witnesses testify[,] and all of the evidence is submitted in written affidavits." *Id.* at 326.

We only reverse the trial court's ruling if we conclude it is arbitrary, unreasonable, and made without reference to guiding rules or principles. *Ex parte Medrano*, No. 08-21-00016-CR, 2022 WL 1681860, at *2 (Tex. App.—El Paso May 26, 2022, pet. ref'd). We must review the record evidence in the light most favorable to the trial court's ruling, and we must uphold that ruling absent an abuse of discretion. *Wheeler*, 203 S.W.3d at 324. We review de novo mixed

3

questions of law and fact that do not depend upon credibility and demeanor. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014).

Texas Code of Criminal Procedure Article 11.072 governs habeas corpus proceedings involving a person who is serving or who has completed a term of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072; *Ex parte Vasquez*, 499 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). In a proceeding under Article 11.072, the trial court is the sole finder of fact. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, §§ 6–7 (providing that trial court shall enter written order granting or denying relief sought and shall enter written order including findings of fact and conclusions of law).

### III.  ISSUES ON APPEAL

Jones brings five issues on appeal wherein he asserts separate grounds for establishing the trial court abused its discretion in denying habeas relief. First, he urges his plea was involuntary. Second, he claims he was deprived of effective assistance of counsel. Third, he argues he was harmed by his trial counsel's errors. Fourth, he contends his claims were not barred by laches. Fifth, he asserts he was wrongly deprived of a hearing on his claims of actual innocence.

Because the trial court expressly ruled that laches barred habeas relief, and a bar of laches is potentially dispositive of other issues, we address laches first and begin with the fourth issue.

### IV.  THE DOCTRINE OF LACHES

In his habeas application, Jones asserted among other claims that he entered a plea of guilty and waived his right to trial based on erroneous advice from his counsel that he would not have to register as a sex offender after he completed probation. He claims this erroneous advice rendered his plea involuntary. Relatedly, he further asserts that trial counsel misinformed him about the law regarding the charge of indecency by contact, and that he would be criminally responsible as an

4

adult despite the fact that the alleged conduct took place when he was 16 years old. In response, the State asserted that Jones's claims were barred by laches and otherwise lacked merit.

The trial court made the following relevant findings of fact and conclusions of law pertaining to laches:

<u>FINDINGS OF FACT</u>

8. On May 2, 2022, more than 24 years after his guilty plea, Jones filed his first application for post-conviction writ of habeas corpus under article 11.072, a copy of which was served on the State by the District Clerk on May 3, 2022.

. . . .

28. The Court finds that Jones's unreasonable delay in filing his writ is not justified.

29. The Court finds that the State has been prejudiced in its ability to retry the case.

30. The Court finds that the State has been prejudiced in its ability to respond to Jones's writ allegations.

<u>CONCLUSIONS OF LAW</u>

1. Jones's writ claims are barred by the common-law doctrine of laches. S*ee Ex parte Perez*, 398 S.W.3d 206, 215 (Tex. Crim. App. 2013).

**A. Applicable law**

The writ of habeas corpus is an extraordinary remedy and granting the writ "must be underscored by elements of fairness and equity." *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). Thus, equity and fairness "require a consideration of unreasonable delay." *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014).

The Court of Criminal Appeals has determined that the doctrine of laches was appropriate for application in the habeas corpus context. *Perez*, 398 S.W.3d at 210; *Bowman*, 447 S.W.3d at 888 (holding "that laches applies to Art. 11.072"). It has defined the common law doctrine of laches as follows:

[The] neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length

of time under circumstances permitting diligence, to do what in law, should have been done.

*Perez*, 398 S.W.3d at 210. The two considerations in determining whether laches should apply are "unreasonable delay by the opposing party and prejudice resulting from the delay." *Id.* at 210 n. 3; *see also Smith*, 444 S.W.3d at 666. A showing of prejudice to the State includes consideration of "anything that places the State in a less favorable position, including the State's ability to retry a defendant[.]" *Perez*, 398 S.W.3d at 215. Proof of "mere passage of time" is insufficient to raise laches. *Id.* at 219.

Whether the doctrine of laches applies is a question of fact to be considered on a case-by-case basis. *Bowman*, 447 S.W.3d at 888. Courts may consider "the totality of the circumstances in deciding whether to grant equitable relief," including "the diminished memories of trial participants and the diminished availability of the State's evidence." *Perez*, 398 S.W.3d at 215–16.

The Court of Criminal Appeals has addressed relevant factors proper to consider in whether a claim for habeas relief should be barred by laches. *See id.* at 217. These include, "among all relevant circumstances, factors such as the length of the applicant's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay." *Id.* "No single factor is necessary or sufficient," but "courts must 'engage in a difficult and sensitive balancing process' that takes into account the parties' overall conduct." *Id.* "[A] court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial." *Id.* When prejudice is shown, the court "must then weigh that prejudice against any equitable considerations that militate in favor of granting habeas relief." *Id.* The degree of proof required is a "sliding scale" approach where "the longer an applicant delays filing his application . . . the less evidence the State must put forth in order to demonstrate prejudice." *Id.* at 217–18. Additionally, when determining whether habeas relief is

6

warranted, we must consider "the State's broad interest in the finality of a long-standing conviction." *Id.*

Courts may reject the State's reliance on laches when the record shows that (1) an applicant's delay was not unreasonable because it was the result of a justifiable excuse or excusable neglect; (2) the State would not be materially prejudiced as a result of the delay; or (3) the applicant is entitled to equitable relief for other compelling reasons, such as new evidence showing that he is actually innocent of the offense or, in some cases, that he is reasonably likely to prevail on the merits. *Id.* at 218. The Court of Criminal Appeals declined to impose a requirement that a defendant assert a claim for habeas relief within a specific period of time, stating instead that it "will continue to apply laches as a bar to relief when an applicant's unreasonable delay has prejudiced the State, thereby rendering consideration of his claim inequitable." *Id.* at 219. The Court noted, however, that a delay of more than five years "may generally be considered unreasonable in the absence of any justification for the delay." *Id.* at 216 n.12.

## B. Analysis

It is undisputed that Jones pleaded guilty to the charged offense and was placed on deferred adjudication community supervision in March 1998. After he successfully completed the full period of community supervision, the trial court discharged him from further supervision, and ordered the proceeding against him dismissed under Article 42.12, section 5(a), of the Texas Code of Criminal Procedure. Neither Jones nor the State, respectively, appealed the 1998 deferred judgment or the 2006 order of discharge and dismissal. On May 2, 2022, Jones filed his application for habeas relief. Jones's application comes more than 24 years after entering his guilty plea, and 16 years after discharge from community supervision and dismissal of his case.

Jones explains the delay by asserting he was advised by counsel that his requirement to register as a sex offender would end upon his completion of community supervision. Upon his

7

discovery that he was still on the sex offender registry, Jones rehired his trial counsel to remedy what he thought was simply a mistake. Trial counsel wrote the Department of Public Safety (DPS) about this issue on May 14, 2008. Eight years after that letter to the DPS, Jones consulted another attorney, who then requested the State's file in late 2017. Jones's newer counsel averred in his declaration under penalty of perjury that the State would not reveal anything in their file, but the prosecutor he met with otherwise claimed there was nothing in the file indicating that the offense had occurred before Jones's 17th birthday. In 2021, counsel again requested the file from a newly elected district attorney, and counsel was provided with the State's file on September 27, 2021.

On review of the record, Jones offered no explanation for the two-year delay between the end of his community supervision and his trial counsel's request that DPS remove Jones's name from the sex offender registry. Likewise, Jones offered no explanation for the eight-year delay between that inquiry and his hiring of another attorney to look into the matter, except that he ultimately sought different counsel "because of the expanding restrictions on sex offenders and the ever increasing, unpredictable and unfair burden on [his] growing family[.]"

The trial court expressly found Jones's delay was unreasonable and was not justified. Although there is no bright-line time period in which a defendant must seek habeas relief under Article 11.072, Jones's delay is well past the five-year mark that the Court of Criminal Appeals has recognized as the point that "may generally be considered unreasonable in the absence of any justification for the delay." *Perez*, 398 S.W.3d at 216 n. 12.

Additionally, the trial court found that the State has been prejudiced both in its ability to retry Jones's case and it its ability to respond to his writ allegations. The trial court found that at the time of trial the victim was already experiencing difficulty in differentiating the instances in which Jones fondled different parts of her body and when he touched her anus. The court also found Jones's trial counsel did not recall many of the particulars of his representation of Jones.

We find support for these findings of fact in the record in the victim's statement and in trial counsel's affidavit. In addition, the trial court found that due to the passage of time, it may be more difficult for the State to locate witnesses and the witnesses' memories may have significantly diminished. These are reasonable inferences that the reliability of a retrial would be compromised by this 24-year delay. *See id.*

Ultimately, the trial court concluded that Jones's delay was not justified and that the State demonstrated it had been prejudiced by Jones's delay. The trial court also determined that Jones failed to present evidence of any compelling reason why laches should not apply. Viewing the record in the light most favorable to the trial court's findings and affording almost total deference to same, especially those that turn on credibility and demeanor, we conclude the trial court did not abuse its discretion by determining that the doctrine of laches applied such that it barred Jones's claims for habeas relief. *Ex parte Becciu*, 615 S.W.3d 482, 496 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Medrano*, 2022 WL 1681860, at *3.

We overrule Jones's fourth issue. Because of our disposition of this issue, we need not address Jones's first, second, or third issues. *See* TEX. R. APP. P. 47.1.

## V. THE HEARING REQUIRMENT

Next, we address Jones's fifth issue and consider whether the trial court otherwise erred by failing to hold an evidentiary hearing on Jones's claim of actual innocence.

### A. Article 11.072's requirements

"Article 11.072 does not require a hearing when the issues can be resolved without one." *Ex parte Arjona*, 402 S.W.3d 312, 319 (Tex. App.—Beaumont 2013, no pet.); *see also Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.). "In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." TEX. CODE CRIM. PROC. ANN. art. 11.072, § 6(b); *see*

9

*also Cummins*, 169 S.W.3d at 757 (Article 11.072 does not require trial court to conduct hearing before rendering decision on relief sought).

Jones contends that several appellate courts, including this Court, have held that trial courts should hold an evidentiary hearing to address claims of actual innocence under Article 11.072. However, to be more precise, this Court has declined to impose a per se hearing requirement when a claim of actual innocence is raised. *See Ex parte Salazar*, 510 S.W.3d 619, 627–28 (Tex. App.—El Paso 2016, pet. ref'd). Rather, this Court and other appellate courts have held that under certain circumstances there can be an entitlement to a hearing on a claim of actual innocence. *See id.*; *Ex parte Franklin*, 310 S.W.3d 918, 922–23 (Tex. App.—Beaumont 2010, no pet.). The right is triggered when an applicant presents evidence that constitutes an affirmative showing of innocence as set forth by the Court of Criminal Appeals. *Franklin*, 310 S.W.3d at 921–22 (citing *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) (recognizing two types of innocence claims—a *Herrera* claim and a *Schlup* claim)). To obtain a hearing when asserting a bare claim of actual innocence, the applicant must show:

> (1) by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence and (2) the evidence the applicant relies upon is "newly discovered" or "newly available" meaning it was not known to the applicant at the time of trial and could not have been known to the applicant even with the exercise of due diligence.

*Ex parte Harris*, No. 05-18-00008-CR, 2018 WL 2749686, at *1 (Tex. App.—Dallas May 31, 2018, no pet.).

In *Franklin*, the newly discovered evidence involved a recantation by the complainant of the allegation that led to the applicant's conviction for aggravated sexual assault of a child. *See Franklin*, 310 S.W.3d at 920. In *Salazar*, there was evidence of a child witness's affidavit reversing the previous stance on her accusation made against the applicant. *See Salazar*, 510 S.W.3d at 628. In both, the appellate court reversed and remanded for the trial court to conduct a hearing on the

10

actual innocence claim, without expressing an opinion on the merits of the appellant's actual innocence claim. *See id.*; *Franklin*, 310 S.W.3d at 920.

## B.  Analysis

The "newly discovered or newly available evidence" Jones brings forth is the "newly obtained prosecution file" which he asserts he only received in 2021 after the State had earlier refused to disclose it in 2017. From this file, Jones asserts the victim mentions he had touched her on her buttocks, but nowhere did she mention he touched her anus. He also asserts his forensic psychologist report independently confirms that he never touched the victim's anus. Jones also relies on a 1997 psychologist's report, as well as the 1997 statements of the victim and her mother, to assert the touching occurred prior to Jones's 17th birthday.

Jones asserts the State's file was never provided to his defense counsel and, even if it had been obtained, the records were never made available to Jones himself. The trial court specifically made a finding that the offense reports were available to Jones at the time of his guilty plea in 1998. On this record, we conclude that Jones's evidence is not newly discovered evidence, as it was all available to him in 1997, prior to his entering of a guilty plea.

Even so, the existing investigation report—which Jones asserts is insufficient to meet the allegations of the indictment—significantly differs from the conflicting statements from a complaining witness obtained in *Franklin* and *Salazar*. That type of conflicting evidence is a more compelling demonstration of innocence than Jones's contention about a report that he only recently contends as being insufficient to support the elements of the offense. His reliance on the newly discovered evidence is based only on his assertion that the State would not have been able to sufficiently prove the charged offense at trial. On this record, however, we are not persuaded. Notably, the habeas record also includes a transcript of Jones's testimony at the plea hearing

11

wherein he admitted to the allegations in the indictment and confessed to having committed the charged offense.

Because we conclude that Jones has not brought forward newly discovered affirmative evidence that unquestionably establishes his innocence, he has failed to trigger an entitlement to an evidentiary hearing. *See Ex parte Harris*, 2018 WL 2749686, at \*5 (holding appellant had failed to present newly discovered affirmative evidence that unquestionably established her innocence, and she was not entitled to a hearing on her 11.072 habeas corpus application); *cf. Franklin*, 310 S.W.3d at 920; *Salazar*, 510 S.W.3d at 628.

We overrule Jones's fifth issue.

## VI.   CONCLUSION

Finding no error, we affirm the trial court's order denying Jones relief under Article 11.072.


GINA M. PALAFOX, Justice

September 1, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.
Palafox, J., concurring

(Do Not Publish)