

# In the Court of Criminal Appeals of Texas

No. WR-94,933-02

EX PARTE MILAT MUKIMIYAN,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. 11-430-K26 B in the 26th District Court
Williamson County

YEARY, J., filed a dissenting opinion in which KEEL and SLAUGHTER, JJ., joined.

Applicant, of Iranian birth, was charged with, and convicted of, the offense of fraudulent use of identifying information, in this instance a state-jail felony. TEX. PENAL CODE § 32.51(b)(1), (c)(1). He pled guilty to that offense but, pursuant to a plea bargain with the State, was punished "for a Class A misdemeanor" at one year's confinement in the

county jail, under Section 12.44(a) of the Penal Code. TEX. PENAL CODE § 12.44(a). He now claims his plea was involuntary because he was not admonished that it would render him susceptible to deportation as a matter of federal law, relying upon *Padilla v. Kentucky*, 559 U.S. 356 (2010). The State agrees that Applicant is entitled to relief, and this Court today grants it.

I would not—at least not yet. Even if Applicant has established the deficient-performance prong of his ineffective assistance of counsel claim under the Sixth Amendment, I cannot agree that he has yet satisfied the prejudice prong. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement [of *Strickland v. Washington*, 466 U.S. 668 (1984), in a guilty plea context], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Under the current state of the record, Applicant has not convinced me that, but for his counsel's failure to inform him of the clear adverse effect of his guilty plea upon his immigration status, there is a reasonable probability that he would have foregone the State's plea bargain and insisted on going to trial.

The convicting court judge who presided over Applicant's guilty plea proceedings in 2011 is different than the convicting court judge who now presides over Applicant's present post-conviction habeas corpus proceedings some twelve years later, in 2023. The current convicting court judge recommends that we find that "Applicant would not have entered his plea had he been properly advised." For his part, Applicant has claimed in an affidavit that he would have eschewed the plea

bargain and insisted on a trial for the following reason:

> Staying in the U.S. was (and is) extremely important to me as I fled my native country of Iran under fear of death and torture and came to the United States as a refugee seeking Asylum (which was later approved). Being deported to Iran would be the most traumatic and life threatening punishment possible and avoidable at all costs.

The current convicting court judge has recommended that we accept this explanation as sufficient proof that Applicant would have insisted on going to trial. But she did not conduct an evidentiary hearing at which to assay the credibility of this claim in person. In my view, we have good reason to doubt that credibility.

The record shows that Applicant was admonished at the time of his guilty plea—at least on paper—pursuant to Article 26.13(a)(4) of the Texas Code of Criminal Procedure about the *possibility* of deportation resulting from the plea. TEX. CODE CRIM. PROC. art. 26.13(a)(4). Specifically, one of the written admonishments informed Applicant in the language of the statute that,

> [i]f the Defendant is not a citizen of the Unites States of America, a plea of guilty or no contest for the offense charged may result in deportation, the exclusion of admission to this country, or the denial of naturalization under federal law.

During the plea colloquy in 2011,[1] Applicant personally acknowledged

---

[1] The Court also grants Applicant relief without addressing the question whether his present claim should be barred by laches. Applicant offers no explanation why it has taken him a dozen years to raise his *Padilla* claim, which has been available to him since the time he entered his plea. Though the State may choose not to contest habeas corpus relief based upon laches, courts are free to inquire *sua sponte*. *Ex parte Smith*, 444 S.W.3d 661, 667 (Tex. Crim. App. 2014).

that he had gone over the written admonishments with counsel, had understood them, and had voluntarily signed that document. In their respective affidavits in support of Applicant's present claim, his trial lawyers do not contest that they at least reviewed these written admonishments with him, even while they admit they did not more specifically advise him of the deportation consequences of his guilty plea.[2]

Thus, the record shows Applicant was certainly made aware of the *possibility* that his guilty plea could result in deportation, even if the near certainty that it would render him deportable was not brought home to him by counsel as it arguably should have been. That he pled guilty in the knowledge of at least the possibility of deportation renders questionable his claim that the prospect of torture and/or death upon deportation to his home country was so daunting that it would have prevented him from ever accepting the State's plea offer, however favorable to him it may have been and however compelling the State's evidence of his guilt may have been.[3]

---

[2] For example, Applicant's lead attorney now concedes: "I probably told [Applicant] something general along the lines of 'I don't practice immigration law, and this could possibly affect your legal residence or possibly cause you issues with deportation.'" The attorney who actually accompanied Applicant to the plea proceeding now attests: "I can say with certainty that I did not give [Applicant] any *specific* admonishments *outside of the statements on the plea admonishments* about how his conviction and sentence for Fraudulent Use of Identifying Information would affect his immigration status[.]" (emphasis added).

[3] By accepting the State's plea offer, Applicant avoided having to serve his sentence in a state jail. Presumably he regarded this as beneficial to him in some way. The potential evidence that could have been presented at a trial

For this reason, if no other, I would not grant Applicant relief on the present state of the record. If nothing else, I would remand this cause for an evidentiary hearing to test the credibility of Applicant's prejudice claim before I would grant him relief. Because the Court now grants relief anyway, I respectfully dissent.

**FILED:**                                                September 27, 2023
**PUBLISH**

---

that Applicant fraudulently presented his cousin's driver's license to a police officer during a traffic stop seems fairly compelling.