

# In the Court of Criminal Appeals of Texas

No. WR-94,707-01

EX PARTE ALLEN ANDRE CAUSEY,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. D-1-DC-91-915672-A
In the 331st District Court
Travis County

YEARY, J., filed a dissenting opinion.

Today, the Court grants relief on the convicting court's finding of false testimony—overturning a more than thirty-year-old conviction. Majority Opinion at 2. Notably, too, the current Travis County District Attorney agrees that relief ought to be granted on this ground. But the trial prosecutor who secured this conviction way back in 1992, attorney

Terry Keel, submitted an *amicus* brief on behalf of the victim's family.[1] I firmly believe that our adversarial system functions at its best when the parties are actually adversaries. Accordingly, I would file and set this case to allow the adversarial process to play out, including by permitting oral arguments with respect to the issues raised in the *amicus*.[2] Because the Court does not, I respectfully dissent.

## I. BACKGROUND

Applicant was convicted of murder in 1992 and sentenced to fifty years' imprisonment. The Third Court of Appeals affirmed his conviction. *Causey v. State*, No. 03-92-00378-CR (Tex. App.—Austin del. Sep. 14, 1994) (not designated for publication). Thirty years later, in 2022, Applicant filed this, his first writ of habeas corpus, in the convicting court. *See* TEX. CODE CRIM. PROC. art. 11.07.

Applicant argues that he is actually innocent, that false testimony led to his conviction, and that the State failed to disclose favorable evidence. After the convicting court held an evidentiary hearing, it entered findings—recommending denying the actual innocence claim but granting relief based on false testimony and suppression of favorable evidence. And the State agrees that Applicant

---

[1] This *amicus* brief was filed in the convicting court. Subsequently, in late February 2025, attorney Brad Heilman submitted a letter to this Court on behalf of the victim's family, urging us to consider the *amicus*. In that letter, he identified himself as "Attorney for the Victim, Anita Byington, through her surviving family[,]" which is same role Mr. Keel held when he submitted the *amicus* brief in November 2023. It is unclear whether Mr. Keel still represents the victim.

[2] Whether Mr. Keel or Mr. Heilman presents oral argument might depend on who currently represents the victim. Regardless, we should permit one of the two to argue the issues highlighted in the *amicus*.

is entitled to relief on those two claims. The Court's opinion today grants relief on one of those two claims—the State's unknowing use of false evidence.

## II. OUR ADVERSARIAL SYSTEM

Our adversarial system "is premised on the well-tested principle that truth . . . is 'best discovered by powerful statements on both sides of the question.'" *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (quoting Irving R. Kaufman, *Does the Judge Have a Right to Qualified Counsel?*, 61 A.B.A.J. 569, 569 (1975), which in turn quotes Lord Eldon). Indeed, "partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862 (1975). And the system "assumes that adversarial testing will ultimately advance the public interest in truth and fairness." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981). Simply put, our adversarial system works best when the parties are adversarial.[3]

Indeed, less than two months ago, the Supreme Court of the United States implicitly reaffirmed this principle in *Glossip v. Oklahoma. See Glossip v. Oklahoma*, 604 U.S. ___, 145 S. Ct. 612, 624 (2025) (analyzing an *amicus* brief filed on behalf of a murder victim's

---

[3] *See United States v. Rhynes*, 196 F.3d 207, 248 (4th Cir. 1999) (King, J., concurring in part and dissenting in part) ("Our adversarial system works best when lawyers are permitted and encouraged to engage in effective lawyering."); *Malone v. Smith*, No. 2:19-CV-02800-JDW, 2023 WL 2351694, at *2 (E.D. Pa. Mar. 3, 2023) ("[O]ur adversarial  system works best when someone presents both sides[.]"), *appeal dismissed sub nom. Malone v. Superintendent Houtzdale SCI*, No. 23-1456, 2023 WL 10367206 (3rd Cir. Dec. 20, 2023).

family). There, the Court appointed counsel to represent a murder victim's family as *amicus curiae* "[b]ecause Oklahoma agree[d] with Glossip on the merits of his appeal[.]" *Id.* Its opinion devoted several pages to addressing the *amicus* brief. *Id.* at 625–32. Although the Court did not allow a hearing for the family, it explicitly rejected the notion that it did not entertain the family's interests, noting that the family did not request a hearing. *Id.* at 632 n.11. Justice Thomas, writing separately, emphasized that he would have given even greater consideration to the *amicus*, suggesting that the Court had merely "retreat[ed] to faux formalism when dealing with the victim's family." *Id.* at 659 (Thomas, J., dissenting).

### III. CAUSE FOR CONCERN

The *amicus* brief in this case highlights things that should cause us to pause before jumping to conclusions about Applicant's false evidence claim. For instance, *amicus* highlights that, at pretrial, Applicant acknowledged that police read him his rights, did not threaten him, and did not beat him. Applicant also testified that Sergeant Polanco was not present when he signed the confession. But at trial, he testified that his confession was the result of threats and intimidation by Sergeant Polanco. Sergeant Polanco denied this allegation and testified that he was never alone with Applicant. And despite Applicant's trial attorney's attempts to introduce extraneous acts by Sergeant Polanco in connection with coerced confessions, the trial judge found the evidence inadmissible and excluded it.

Additionally, Applicant's delay in bringing all his claims raises serious cause for concern. His trial was in 1992, but he did not raise

these issues until 2022—thirty years later. This "neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done" is subject to laches.[4] *Ex parte Perez*, 398 S.W.3d at 210 (first quoting *Ex parte Carrio*, 992 S.W.2d 486, 487 n.2 (Tex. Crim. App. 1999), which in turn quotes BLACK'S LAW DICTIONARY 875 (6th ed. 1990)). Although the State attempts to *waive* laches, its attempt should be considered by the Court to be utterly ineffectual because society has an interest in the finality of convictions and because this Court has already explained that courts may consider the issue *sua sponte*, without the need of the State raising it in the first place. *See Ex parte Smith*, 444 S.W.3d 661, 668 (Tex. Crim. App. 2014) ("A court may consider *sua sponte* the interests of the judicial system and society generally because they implicate values that may stretch beyond the concerns of the parties.").

Because of the concerns that the *amicus* brief highlights, it is of the utmost importance that we invoke our adversarial system. As the Supreme Court of the United States explained, doing so is the best way to ensure that "the guilty be convicted and the innocent go free." *Herring*, 422 U.S. at 862. It is the best way to discover truth and ensure fairness. As in *Glossip*, where the United States Supreme Court entertained an *amicus* brief when the State agreed that relief was appropriate, we too should entertain adversarial arguments relevant to

---

[4] Any argument that the delay is explained by recently discovered evidence ignores the fact that Applicant attempted to impeach Sergeant Polanco at the time of his trial, indicating at least some awareness (even way back then) of the very grounds upon which Applicant now—thirty years later—requests relief from this Court.

determining the truth. We should do so by permitting oral argument, and we should invite the representatives of the victim's family to participate.[5]

What we should not do is grant relief in a two-page, unpublished opinion that ignores the *amicus* brief entirely. Instead, we should follow the lead of the United States Supreme Court and address all relevant evidence and arguments before overturning a conviction. Even assuming that the majority in *Glossip* engaged in "faux formalism" as Justice Thomas suggested, *Glossip*, 145 S. Ct. at 659 (Thomas, J., dissenting), the Court at least *addressed* the arguments of the *amicus*, unlike this Court today. We should embrace our adversarial system and allow "partisan advocacy on both sides of [the] case [to] best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring*, 422 U.S. at 862.

## IV. CONCLUSION

It is axiomatic that the State is not permitted to present false evidence to obtain a conviction. Doing so violates a prosecutor's primary

---

[5] While the State and habeas counsel object that Mr. Keel labors under a conflict of interest, I fail to see a conflict in a trial prosecutor, in a habeas proceeding, defending a conviction that he obtained and representing the victim's family—particularly when he is one of only two attorneys willing to do so and takes the time to highlight relevant evidence for the Court's consideration. *See Glossip*, 145 S. Ct. at 659 (Thomas, J., dissenting) ("[E]ven if the family had no formal right to be heard, any reasonable factfinder plainly could consider the account of the evidence that the family has brought to light, making the majority's procedural objections beside the point."). And even if Mr. Keel did labor under a conflict of interest, Mr. Heilman is presumably free of any conflict.

duty to ensure that justice is done.[6] But before holding at so late a date that the State committed this grievous legal sin, the Court should permit assiduous testing of the issue—and take full advantage of the adversarial process.

In light of the issues raised by the *amicus*, and relying fervently on the principle that our adversarial system works best when the parties are actually *adversaries*, I would file and set this case for a written opinion; and I would set it for oral argument. Because the Court instead dispenses with these best-practice truth-finding steps, I dissent.[7]

**FILED:** April 16, 2025
**PUBLISH**

---

[6] *See* TEX. CODE CRIM. PROC. art. 2.01 ("It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done.").

[7] Former Presiding Judge Keller, prior to her departure from the Court, wrote a dissent in this case sharing many of these same thoughts, which I would have joined had the Court issued its ruling before her departure.