**Opinion filed October 26, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00029-CR

_____

## EX PARTE DONNIE BARNUM, Appellant

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR18107-A**

### M E M O R A N D U M   O P I N I O N

Appellant, Donnie Barnum, appeals the trial court's denial of his application for writ of habeas corpus.  We affirm.

*Background Facts*

Appellant sought habeas corpus relief from a judgment of conviction and an order of community supervision entered on April 27, 2006.  Following a jury trial, Appellant, a constable in Brown County, was found guilty on one count of tampering with or fabricating physical evidence and two counts of official oppression.  *See* TEX. PENAL CODE. ANN. §§ 39.03(a)(1), 37.09 (West Supp. 2022).  Following the

jury's verdict, Appellant negotiated a plea agreement with the State that included a waiver of his right to appeal.[1] The trial court accepted his waiver, barred any further prosecution of four unindicted offenses, ordered Appellant to voluntarily relinquish his peace officer's certification, removed him as constable, and sentenced him in accordance with the plea agreement. In 2011, Appellant violated certain terms and conditions of his community supervision and the State filed a motion to revoke Appellant's community supervision. The trial court found the allegations in the State's motion to revoke to be "true," continued Appellant's community supervision, and amended the terms to include sixty days confinement in the Brown County jail. Appellant was discharged from community supervision in 2016.

Approximately fifteen years after his convictions, Appellant filed an application for writ of habeas corpus in the convicting court. *See* TEX. CODE CRIM. PROC. art. 11.072 (West Supp. 2022), art. 11.09 (West 2015). Appellant asserted (1) twelve grounds for relief on the basis of ineffective assistance of trial counsel, and (2) one ground for relief that claimed a due process violation for the alleged use of false testimony, wherein he alleged an additional claim of ineffective assistance of counsel "to the extent that Trial Counsel was aware (or should have been aware) of the State's misrepresentations of the evidence."[2] The State responded to Appellant's claims on substantive grounds and asserted that laches barred

---

[1]Specifically, Appellant negotiated a plea agreement with the State that included a waiver of his right to appeal and the State's agreement not to prosecute him for additional offenses. For the felony conviction, Appellant would receive ten years of community supervision, relinquish his peace officer's certificate, and be permanently "disbar[red] from . . . engaging in any law enforcement activities in the future." For the misdemeanor convictions, Appellant would receive one day in jail with credit for time served and $100 fine for each conviction. Following sentencing, the trial court stated, "Now, at this point, you have no right of appeal. You have waived that, that is noted."

[2]On appeal, Appellant does not address or brief the trial court's denial of relief on due process grounds.

Appellant's application. In support, the State asserted that Appellant failed to justify the fifteen-year delay and failed to identify a compelling reason that would justify equitable relief. The State also asserted that it would be "far more prejudiced in its ability to address these claims today than it would have been in the five years after [Appellant's] conviction" because two eyewitnesses, including the victim, had passed away and the original trial court judge had retired.

The trial court conducted a hearing on Appellant's application. On January 31, 2022, the trial court entered an order in which it adopted the State's proposed findings of fact and conclusions of law and denied habeas corpus relief. The trial court's findings of fact include the following.

1. The Court finds that on November 10, 2005, Applicant was indicted on one count of the offense of Tampering with or Fabricating Physical Evidence, a Third-Degree Felony, and two counts of the offense of Official Oppression, a Class A misdemeanor, in the 35th Judicial District Court, Brown County, Texas.

2. The Court finds that at the time of the indictment, the Applicant was the elected Constable of Precinct One in Brown County, Texas.

3. The Court finds that the Applicant was convicted by a jury on April 27, 2006 in the 35th Judicial District Court, Brown County, Texas, in Cause Number CR18107, and that the jury returned a verdict of Guilty on one (1) count of the offense of Tampering with or Fabricating Physical Evidence, a Third-Degree Felony, and a verdict of Guilty on two counts of the offense of Official Oppression, a Class A misdemeanor.

4. The Court finds that, after conviction by jury and before a trial on punishment, Applicant entered into a plea agreement with the State for punishment as follows: ten (10) years in the Institutional Division of the Texas Department of Criminal Justice probated for ten (10) years for the felony conviction: and one day in Brown County jail for the misdemeanor conviction.

3

5. The Court finds that Applicant was represented at the jury trial by two attorneys: Keith Woodley and Lance Wyatt.

6. The Court finds that Applicant was discharged from his term of community supervision on April 26, 2016 pursuant to an Order signed by Judge Stephen Ellis, the presiding judge of the 35th Judicial District Court.

7. The Court finds that the original trial judge of Applicant's case, Stephen Ellis, retired from his position as 35th Judicial District Judge on December 31, 2020.

8. The Court finds that Applicant filed his Application for Writ of Habeas Corpus on April 30, 2021 in the 35th Judicial District Court, Brown County, Texas, and that the Application put forth thirteen (13) grounds for relief, and that grounds 1-12 were claims of ineffective assistance of counsel at the jury trial, and that ground 13 was a claim of a due process violation by the State for knowingly using false testimony.

. . . .

14. Based on the evidence offered by the Applicant at an evidentiary hearing on December 2, 2021, the Court finds that Applicant did not provide credible justification for waiting fifteen years after conviction to file this writ.

15. Based on the evidence offered by the Applicant at an evidentiary hearing on December 2, 2021, the Court finds that Gary Joyner and Betty Gilbreath, who were each critical witnesses of the State in the original trial of this case and would be critical witnesses in a re-trial, are both now deceased.

The trial court concluded that the doctrine of laches was applicable and that laches barred Appellant's habeas application, because the State established that it was prejudiced by the fifteen-year delay and the deaths of two critical eyewitnesses, Joyner, the victim, and Gilbreath, his mother-in-law, and Appellant had failed to demonstrate a justifiable excuse for delay.

Appellant presents two issues on appeal. He asserts in both issues that the trial court erred when it denied his application for writ of habeas corpus. The first issue relates to the trial court's denial of the application based on laches. The second issue relates to the trial court's denial of Appellant's ineffective-assistance-of-counsel claims.

*Standard and Applicable Law*

We review a trial court's ruling on a habeas application for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see also Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). The court of appeals must view the facts in the light most favorable to the trial court's ruling. *Kniatt*, 206 S.W.3d at 664; *Wheeler*, 203 S.W.3d at 324. An applicant seeking post-conviction habeas relief bears the burden of proving the claim by a preponderance of the evidence. *Ex Parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002)). The trial court is the sole finder of the facts, and the appellate court must afford almost total deference to a trial court's findings of fact when those findings are supported by the record. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (applying the standard from *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011) (same); *see also Torres*, 483 S.W.3d at 42.

Laches is a question of fact. *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014). A laches inquiry is to be considered on a case-by-case basis. *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). Courts should consider, among other things, the length of the delay in requesting habeas corpus relief, the reasons for the delay, and the degree and type of prejudice borne by the

State resulting from the delay. *Id.* at 666–67. "[T]he longer an applicant delays filing his application, and particularly when an applicant delays filing for much more than five years after conclusion of direct appeals, the less evidence the State must put forth in order to demonstrate prejudice." *Ex parte Perez*, 398 S.W.3d 206, 217–18 (Tex. Crim. App. 2013). A habeas applicant's "delay may be excused when the record shows that (1) an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect; (2) the State would not be materially prejudiced as a result of the delay; or (3) the applicant is entitled to equitable relief for other compelling reasons, such as new evidence that shows he is actually innocent of the offense." *Smith*, 444 S.W.3d at 667 (citing *Perez*, 398 S.W.3d at 218). "An applicant's delay in seeking habeas corpus relief may prejudice the credibility of his claim." *Ex parte Anaya*, No. 11-19-00122-CR, 2019 WL 3023569, at *2 (Tex. App.—Eastland July 11, 2019, pet. ref'd) (mem. op., not designated for publication) (quoting *Kniatt*, 206 S.W.3d at 664).

*Analysis*

The trial court acted within its discretion when it found that Appellant had not provided a credible justification for waiting fifteen years to file his application for habeas relief. At the habeas hearing, Appellant testified that he was diligent in looking for attorneys to engage "from the day [he] got convicted," but suffered difficulties in finding one to take his case. Appellant testified that he initially retained two attorneys to work on his writ application, although he did not testify as to when he hired them. Appellant also testified that "[his] attorneys told [him] to drop it. [To] not file this writ while [he's] on probation, because they're gonna [sic] come at [him] again."

6

In this regard, Appellant indicated that the State's actions caused him to wait to file his application until he was no longer on community supervision. Specifically, the State filed a motion to revoke Appellant's community supervision five days before a hearing on Appellant's motion for early termination of his community supervision and to set aside the verdict.[3] According to Appellant, the district attorney's office told Appellant's attorneys that Appellant would be arrested at the hearing if his attorneys did not withdraw the motion for early termination. Appellant testified that his attorneys then withdrew the motion without notifying Appellant and told him to not file his habeas application while he was on community supervision.[4] Appellant stated that he followed his attorneys' advice; however, he "continued to work behind the scenes on the writ."

Although Appellant's community supervision ended in April of 2016, he waited to file his habeas corpus application five years thereafter. Appellant testified that he faced further complications: after paying two other attorneys to work on the application, they died; a third hired attorney was "kicked in the head by a horse," which, according to Appellant, "threw that back a year or two." Appellant visited

---

[3]The State initially filed the motion to revoke on the grounds that Appellant had "Conspire[d] to Circumvent Secret Deliberations" almost two years prior. Based on this filing, law enforcement conducted a compliance search of Appellant's house and discovered ten guns and "various ammunitions" at his house, locked inside his daughter's safe. The State amended its motion to revoke with ten additional counts of unlawful possession of firearms; then, two days before the hearing, the State amended the first count of the motion to read that Appellant committed the offense of "Disclosure of Certified Agenda or Tape Recording of Closed Meeting," in violation of Section 551.146 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 551.146 (West 2017). Appellant filed a motion to strike, which the trial court granted on the first count at the hearing on the State's motion to revoke. After the hearing, the trial court found that Appellant violated his community supervision based on unlawful possession of firearms and ordered an additional term of confinement in the Brown County Jail for sixty days, but continued Appellant's community supervision.

[4]We note that nothing in the record documents any withdrawal of the motion. The trial court denied the motion for early termination at the hearing on the motion to revoke.

several other attorneys who declined to take his case, stating that "this is probably six or seven attorneys that's done me this way." Eventually, Appellant found his present counsel; but again, Appellant did not clearly state when he hired him.

Based on Appellant's testimony, the trial court found that "Applicant did not provide credible justification for waiting fifteen years after conviction to file this writ." As the sole factfinder for the habeas hearing, the trial court acted within its discretion to determine the credibility of Appellant's testimony and find that he failed to establish a justifiable reason for delay. *See Torres*, 483 S.W.3d at 42. Even without controverting evidence from the State, the trial court was free to determine that Appellant did not prove a justifiable delay. *See Ex parte Becciu*, 615 S.W.3d 482, 494–95 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The trial court also acted within its discretion when it found that the State would be prejudiced due to the death of two critical eyewitnesses, Joyner and Gilbreath. Joyner was the victim and a principal witness regarding the charges. Gilbreath was Joyner's mother-in-law and a principal eyewitness regarding the assault and the tampering-with-evidence offense. The Court of Criminal Appeals has noted that permitting long-delayed claims to proceed may be inequitable where participants from the initial trial are deceased. *Perez*, 398 S.W.3d at 211 (quoting *Ex parte Carrio*, 992 S.W.2d 486, 487–88 (Tex. Crim. App. 1999)). Such is the case here where, of the three eyewitnesses to the offenses, only Appellant remains.

Appellant argues that the State could admit the deceased witnesses' testimony from the first trial, and that doing so would cure any prejudice. In support, Appellant states that the State could introduce the witnesses' testimony pursuant to Rule 804(b)(1)(B) of the Texas Rules of Evidence. *See* TEX. R. EVID. 804(b)(1)(B).

8

The State responds that this argument "ignores the State's need to respond specifically to a variety of different defensive theories."

When offered in a criminal case, former testimony is testimony that "was given as a witness at a trial or hearing of the current or a different proceeding . . . and is now offered against a party who had an opportunity and similar motive to develop [the testimony] by direct, cross, or redirect examination." *Id.* Former testimony is admissible as an exception to the hearsay rule if the declarant is unavailable as a witness. *Id.* at 804(b)(1). A declarant is unavailable if he or she "cannot be present or testify at the trial or hearing because of death." *Id.* at 804(a)(4). For instance, in Appellant's Application for Writ of Habeas Corpus, the veracity of Joyner's testimony and version of the events on the evening of the entry into his home by Appellant is called into question by Appellant's hired private investigator, Tom Swearingen, who allegedly "conducted testing to determine the plausibility of Joyner's story." Swearingen challenges the sequence of events, timing and distance and he therefore concludes that "[a]ll of this makes Joyner's story completely incredible and physically impossible." Joyner, deceased, cannot appear at a retrial and defend his prior testimony, contest Swearingen's assumptions and conclusions, and explain to the factfinder why it should accept his testimony.

Appellant further calls into question Joyner's testimony regarding his t-shirt being ripped off by Appellant, where that occurred, and argues that Gilbreath's testimony materially conflicted with Joyner's. Being deceased, Gilbreath also cannot be called upon to explain and defend her prior testimony currently under attack by Appellant.

The delay in Appellant filing his habeas application materially prejudices the State in addressing these Appellant-stated fact issues and any other issues that might

9

arise during a retrial when there is no living eyewitness to rebut them. In this case, former testimony from a static transcript does not permit the State to rebut new or further nuanced testimony of Appellant in content or context. Nor does it furnish a way to adequately respond to attacks on Joyner's and Gilbreath's former stated perceptions or testimony and provides no tone of voice or other nonverbal communication upon which a factfinder may rely in evaluating a witness's credibility when there is competing testimony. *See Meekins v. State*, 340 S.W.3d 454, 461 n.32 (Tex. Crim. App. 2011) ("Determinations of witness credibility are left entirely to the fact finder, who is in the unique position to observe the witness' body language, demeanor, tone of voice, and other indicia of credibility."); *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007) (the trial court assesses not only the words spoken on cross-examination, but its tone, tenor, and nonverbal cues). It was well within the trial court's discretion to find that the death of two critical eyewitnesses negatively affected the State's ability to rebut Appellant's recollection of the offense. *See Anaya*, 2019 WL 3023569, at *2.

Based on the circumstances in this case, which include Appellant's fifteen-year delay in requesting habeas corpus relief, the reasons given for his delay, and the degree and type of prejudice to the State as a result of his delay, we conclude that the trial court did not abuse its discretion when it found that laches barred Appellant's application for writ of habeas corpus.

Accordingly, we overrule Appellant's first issue on appeal. Because this court's ruling on Appellant's first issue is dispositive of this appeal, we need not address Appellant's second issue. *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS

JUSTICE

October 26, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.